# EXHIBIT 1

FILED DATE: 7/18/2022 4:06 PM    2022L006413

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

JOEL HABICH

v.

EXELON CORPORATION, COMMONWEALTH EDISON COMPANY, ACLARA TECHNOLOGIES, LLC and ACLARA METERS LLC

FILED
7/18/2022 4:06 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022L006413
Calendar, D
18718015

**2022L006413**

No. _____

### CIVIL ACTION COVER SHEET - CASE INITIATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the complaint in all civil actions. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box in front of the appropriate case type which best characterizes your action. Only one (1) case type may be checked with this cover sheet.

Jury Demand ☒ Yes ☐ No

**(FILE STAMP)**

### PERSONAL INJURY/WRONGFUL DEATH

CASE TYPES:
- ☐ 027 Motor Vehicle
- ☐ 040 Medical Malpractice
- ☐ 047 Asbestos
- ☐ 048 Dram Shop
- ☒ 049 Product Liability
- ☐ 051 Construction Injuries
  (including Structural Work Act, Road Construction Injuries Act and negligence)
- ☐ 052 Railroad/FELA
- ☐ 053 Pediatric Lead Exposure
- ☐ 061 Other Personal Injury/Wrongful Death
- ☐ 063 Intentional Tort
- ☐ 064 Miscellaneous Statutory Action
  (Please Specify Below**)
- ☐ 065 Premises Liability
- ☐ 078 Fen-phen/Redux Litigation
- ☐ 199 Silicone Implant

### TAX & MISCELLANEOUS REMEDIES

CASE TYPES:
- ☐ 007 Confessions of Judgment
- ☐ 008 Replevin
- ☐ 009 Tax
- ☐ 015 Condemnation
- ☐ 017 Detinue
- ☐ 029 Unemployment Compensation
- ☐ 031 Foreign Transcript
- ☐ 036 Administrative Review Action
- ☐ 085 Petition to Register Foreign Judgment
- ☐ 099 All Other Extraordinary Remedies

By: Dennis Stefanowicz 6210166
_____
(Attorney)                    (Pro Se)

### COMMERCIAL LITIGATION

CASE TYPES:
- ☐ 002 Breach of Contract
- ☐ 070 Professional Malpractice
  (other than legal or medical)
- ☐ 071 Fraud (other than legal or medical)
- ☐ 072 Consumer Fraud
- ☐ 073 Breach of Warranty
- ☐ 074 Statutory Action
  (Please specify below.**)
- ☐ 075 Other Commercial Litigation
  (Please specify below.**)
- ☐ 076 Retaliatory Discharge

### OTHER ACTIONS

CASE TYPES:
- ☐ 062 Property Damage
- ☐ 066 Legal Malpractice
- ☐ 077 Libel/Slander
- ☐ 079 Petition for Qualified Orders
- ☐ 084 Petition to Issue Subpoena
- ☐ 100 Petition for Discovery

** _____
_____

Primary Email: dstefanowicz@gjdlaw.com

Secondary Email: gdunn@gjdlaw.com

Tertiary Email: pongpak@gjdlaw.com

**Pro Se Only:** ☐ I have read and agree to the terms of the *Clerk's Office Electronic Notice Policy* and choose to opt in to electronic notice form the **Clerk's Office** for this case at this email address: _____

## IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED
7/18/2022 4:06 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022L006413
Calendar, D

FILED DATE: 7/18/2022 4:06 PM   2022L006413

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| JOEL HABICH, individually and on behalf of a class of persons similarly situated, ) ) ) | Case No. 2022L006413 |
| Plaintiffs, ) ) | |
| v. ) ) | JURY DEMANDED |
| EXELON CORPORATION, ) COMMONWEALTH EDISON ) COMPANY, ) ACLARA TECHNOLOGIES, LLC ) AND ) ACLARA METERS LLC ) ) | |
| Defendants. ) | |

_____

## CLASS ACTION COMPLAINT

The Plaintiff, JOEL HABICH, individually and on behalf of a class of persons similarly

situated, through their attorneys, GLEN J. DUNN & ASSOCIATES LTD, and for their

Complaint against the Defendants, EXELON CORPORATION and COMMONWEALTH

EDISON COMPANY, ACLARA TECHNOLOGIES, LLC, and ACLARA METERS LLC,

states:

## THE PARTIES AND JURISDICTION

1)       Defendant, EXELON CORPORATION, is an American Fortune 100 Energy

Company, incorporated in the State of Pennsylvania, headquartered in Chicago at 10 South

Dearborn Street, Chicago, IL – 60603. Defendant EXELON CORPORATION owns subsidiary

company Defendant COMMONWEALTH EDISON COMPANY, an electric utility company,

headquartered at 442 South LaSalle Street, Chicago, IL – 60605.  Defendant,

COMMONWEALTH EDISON COMPANY, regularly and continuously did business within the

State of Illinois, by delivering power to over 3.8 million homes and businesses across Illinois.

FILED DATE: 7/18/2022 4:06 PM    2022L006413

Plaintiffs are residents in the State of Illinois, who utilized services from Defendant COMMONWEALTH EDISON COMPANY and received electric supply and lived and/or owned residential and commercial buildings supplied with COMMONWEALTH EDISON COMPANY owned Electric Smart Meters. Defendant ACLARA TECHNOLOGIES, LLC (a subsidiary of Hubbell Incorporated), is a supplier of Smart Infrastructure Solutions (SIS) to water, gas and electric utilities, headquartered at 77 West Port Plaza Drive, St. Louis, MO – 63146 and is one manufacturer of the Electric Smart Meters supplied by Defendant COMMONWEALTH EDISON COMPANY, including the Electric Smart Meter supplied to the Plaintiff. Defendant, ACLARA TECHNOLOGIES LLC, regularly and continuously did business within the State of Illinois, by marketing, selling, distributing, and providing training and other services associated with the supply of Smart Infrastructure Solutions (SIS) to water, gas and electric utilities, including but not limited to the I-210 line of single phase residential electric meters. Defendant ACLARA METERS LLC (a subsidiary of Defendant ACLARA TECHNOLOGIES LLC), is a supplier of Smart Infrastructure Solutions (SIS), with its principal office at 40 Waterview Drive, Shelton, CT – 06484, and is a manufacturer and distributor of the Electric Smart Meters supplied by Defendant COMMONWEALTH EDISON COMPANY, including the Electric Smart Meter supplied to the Plaintiff. Defendant, ACLARA METERS LLC, regularly and continuously did business within the State of Illinois, by manufacturing, marketing, distributing and providing training and other services associated with the supply of Smart Infrastructure Solutions to water, gas and electric utilities.

2)     Plaintiff brings count I through IV as an individual action under 735 ILCS 5/2-209, being a resident of the State of Illinois and as a person who owned and operated a business

FILED DATE: 7/18/2022 4:06 PM    2022L006413

within the State of Illinois. Plaintiff brings Count V, VI and VII as a class action under 735 ILCS 5/2-801.

3)      Plaintiff Joel Habich is a resident and citizen of Cook County, Illinois, and his commercial business Don's Hot Dogs III, was deriving electric supply from Defendant COMMONWEALTH EDISON COMPANY, which had installed Defendant ACLARA TECHNOLOGIES LLC'S Electric Smart Meter in Joel Habich's Property.

4)      At all relevant times, the Plaintiff and each of the putative class members Plaintiff Joel Habich seeks to represent have been or are utilizing electricity services from Defendant COMMONWEALTH EDISON COMPANY and/or have suffered personal and/or property damages because of using Defendant ACLARA TECHNOLOGIES LLC's Electric Smart Meters.

## **BACKGROUND FACTS**

5)      On July 29, 2020, Plaintiff Joel Habich, owned and operated Don's Hot Dogs III, Inc., a commercial business at 7245 West 151st Street, Orland Park, County of Cook, State of Illinois.

6)      Said commercial business was operated from a single-story masonry building at the location. The building was owned by the Plaintiff.

7)      The building at the location was supplied with electrical service from Defendant COMMONWEALTH EDISON, ("COMED"), a subsidiary business of Chicago based Defendant EXELON CORPORATION ("EXELON"), who installed and maintained the electrical service to the building. The electrical service included an Aclara I-210+c electrical smart meter, bearing Meter No. 273403352_G, a smart meter housing unit, a pedestal and a 2-inch supply conduit that attached to the bottom of the smart meter housing, which was installed on April 6, 2018.

FILED DATE: 7/18/2022 4:06 PM    2022L006413

8)      The smart meter and conduit were affixed and on the south exterior wall of the building. The 2-inch conduit extended down from the meter housing into the ground and connected underground to the external transformer located approximately 10 feet from the south exterior wall, smart meter housing and conduit. Said service was grounded to a copper grounding rod attached to a copper clamp with a galvanized bolt.

9)      On July 29, 2020, at approximately 00:40 hours, a structural fire started and destroyed the commercial restaurant at 7245 West 151st Street, Orland Park, County of Cook, State of Illinois and said fire and damages were witnessed by the Plaintiff Joel Habich.

10)     Multiple agencies, including the Office of the Illinois State Fire Marshall investigated the cause and origin of the fire.

11)     The area of origin where the fire began, was the south exterior wall of the building at the COMED electrical smart meter and 2-inch supply conduit.

12)     The ignition source of the fire was the energized 120/240 single-phased electrical service from the COMED pad mounted transformer back to the exterior mounted smart meter pedestal and conduit service chase way attached to the south exterior wall of the building.

13)     Defendant COMED arrived at the scene and investigated and acknowledged the same under COMED "ticket" number #06380439. The work and investigation done by NICOR (gas provider) was done under an unknown "ticket" or incident number.

14)     Following the incident, besides the state and local agencies that investigated this occurrence, the COMED retained "Hansen Engineering Services, Inc.", to investigate the cause and origin of the July 29, 2020 fire and has performed an analysis inclusive of partially destructive testing of the artefacts and other evidence.

FILED DATE: 7/18/2022 4:06 PM   2022L006413

15)     Because of the fire, the building at 7245 West 151st street, Orland Park, County of cook, State of Illinois, was destroyed and rendered unusable causing the Plaintiff damages and injuries, including but not limited to lost business, property damage and mental, psychological, emotional and personal injuries caused by Defendant's actions.

16)     Defendants EXELON and COMED have been approved by the Illinois Commerce Commission to implement a Smart Grid Advanced Metering Infrastructure Deployment Plan, a multi-million-dollar plan to upgrade and modernize the electric delivery system.

17)     Under said approval, Defendant COMED installed new AMI smart meters and replacing the older non-AMI meters and provided the consumer with a General Terms and Conditions, which is marked as Exhibit 2.

18)     Defendant COMED, unambiguously states that all meter-related facilities provided by the Company at a retail customer's premises, to measure electric service provided to the retail customer, unless otherwise expressly provided, are the property of the Company.

19)     Defendant COMED, in its General Terms and Conditions states that the Company owns, installs, operates, replaces and maintains meter-related facilities in the provision of electric service to the retail customer and that such installation would be governed by the Terms contained in the General Terms and Conditions.

20)     Defendant COMED, states that a trained meter installer visually inspects the meter fitting prior to installing the AMI meter and only where the installer identifies no lack of compliance with the applicable Company and/or Safety Standards, the non-AMI meter is removed and replaced with the AMI meter.

FILED DATE: 7/18/2022 4:06 PM   2022L006413

21)     Defendant COMED willfully, wantonly and negligently installed defective smart meters in several properties, after identifying those properties met the applicable safety standards, even though they had prior knowledge that the AMI Smart Meters they installed had a history of being fire hazards.

22)     Defendant COMED, as early as 2012 knew of the AMI Smart Meters causing "small fires" and there were several instances were COMED acknowledged that the fire was directly linked to the Smart Meter but did not stop or pause installation to rectify the known defects.

23)     Defendant COMED issued a statement, given those incidents of fire, that technicians would look out for and modify the connection point when needed during the deployment of smart meters. However, there have been several incidents since 2012, where the same issues regarding the lack of the Bakelite backplate, the remote connectivity function and the sockets have caused a fire, leading to various degrees of personal and property damages.

## COUNT I
### (BROUGHT BY PLAINTIFF JOEL HABICH INDIVIDUALLY)
### COMMONWEALTH EDISON COMPANY AND EXELON CORPORATION
### WILLFUL AND WANTON AND NEGLIGENCE

24)     The Plaintiff adopts, reasserts, and realleges paragraphs 1 through 23 as if set forth herein.

25)     At all times relevant hereto, the Defendants, EXELON AND COMED, jointly and/or individually, and their predecessor and/or successor in interest, had a duty to provide the plaintiff with electricity supply by installing the proper and necessary equipment required for completing that duty in a careful and prudent manner, so as to protect and guard against the possibility of fire and fire-related damages to the lives and property of others when the equipment was used for its intended purpose.

FILED DATE: 7/18/2022 4:06 PM   2022L006413

26)     The Defendant COMED chose to install and equip the "Aclara I-210+c" model to provide the electricity supply. COMED specifically states that it would be responsible for deploying AMI meters in accordance with the AMI plan as approved by the Illinois Commerce Commission Order dt. Dec 16, 2021 in Docket No. 21-0810. COMED further states that COMED owns all equipment it installs and that it would continue to own the installed equipment even if repaired by an entity other than COMED itself.

27)     The Defendants COMED and EXELON violated the aforesaid duty by one or more of the following negligent acts and/or omissions:

a)  Willfully, wantonly and negligently choosing to install the Aclara I-210+c smart meter, which had inherent design and manufacturing defects, thereby installing equipment that was carelessly and improperly failed to be designed in a fire-safe manner;

b)  Willfully, wantonly and negligently failed to exercise due diligence in the proper installation of the AMI meter, including but not limited to identifying potential points of loose connections, checking the corrosion levels at the connection points and other potential issues that should have been identified as an overheating or fire-hazard so as to avoid the potential for causing a fire;

c)  Willfully, wantonly and negligently failed to provide proper training to installation technicians to conduct their due diligence and identify the above-mentioned factors and rectifying the same, before proceeding with the installation procedures, so as to avoid the potential for causing a fire;

d)  Willfully, wantonly and negligently failed to conduct adequate testing/ and other quality control measures conducted on the Aclara I-210+c so as to ensure that it was properly manufactured and/or assembled as to avoid the potential for causing a fire;

FILED DATE: 7/18/2022 4:06 PM   2022L006413

e) Willfully, wantonly and negligently failed to warn or otherwise notify anyone and/or attach adequate warnings on the machine identifying the propensity of the Aclara I-210+c to malfunction and thereby start a fire;

f) Negligently, carelessly and improperly trained and/or provided inadequate training and information to the users of the Aclara I-210+c AMI meter to be alert to the propensity of a fire and/or identifying common causes of fires so as to be adequately prepared to respond in the event of such a fire.

28) As a direct and proximate result of one or more of the foregoing willful and wanton and negligent acts and/or omissions on part of the defendants, a malfunction occurred in the Aclara I-210+c system, causing a fire, which led to the total destruction of the building and all personal belongings inside the building at 745 West 151st Street, Orland Park, County of Cook, State of Illinois, incurring heavy destruction to personal property, commercial property, and mental, psychological, emotional and personal injuries.

WHEREFORE, the Plaintiff, Joel Habich, as owner and operator of Don's Hot Dogs III, Inc. respectfully requests a judgment against the Defendants, EXELON AND COMED, in excess of the minimum jurisdictional limits of this Court, which will represent fair and just compensation.

## COUNT II
## (BROUGHT BY PLAINTIFF JOEL HABICH INDIVIDUALLY)
## COMMONWEALTH EDISON COMPANY AND EXELON CORPORATION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

29) The Plaintiff hereby adopts, reasserts, and realleges paragraphs 1 through 23 as if fully set forth herein.

30) At all times relevant hereto, the Defendants, EXELON and COMED, jointly and/or individually, and their predecessor and/or successor in interest, had a duty to provide the

8

FILED DATE: 7/18/2022 4:06 PM  2022L006413

Plaintiff with electricity supply by installing and maintaining the proper and necessary equipment required for the completion of that duty in a careful and prudent manner, so as to protect and guard against the possibility of fire and fire-related damages to the lives and property of others when the equipment was used for its intended purpose.

31)     The Defendant COMED chose to install and equip the "Aclara I-210+c" model to provide the electricity supply to the Plaintiff. COMED specifically states that it would be responsible for deploying AMI meters in accordance with the AMI plan as approved by the Illinois Commerce Commission Order dated Dec 26, 2021 in Docket No. 21-0810. COMED further states that COMED owns all the equipment that it installs and that it would continue to own the installed equipment even if repaired by an entity other than COMED itself.

32)     The Defendant COMED AND/OR EXELON CORPORATION violated the aforesaid duty, thereby committing Negligent Infliction of Emotional Distress on the Plaintiff.

33)     The Defendant meets all the elements of a Negligent Infliction of Emotional Distress Claim:

a)  Defendant COMED AND/OR EXELON who were in the business of providing electricity supply to the Plaintiff had a duty to exercise reasonable care and ensure that the AMI Smart Meters that were installed and maintained by them would not be susceptible to fire or other combustion related events.

b)  Defendant breached this duty by choosing to install and maintain the "Aclara I-210+c" Smart Meter, which was a fundamentally inferior and defective Smart Meter and Defendant had sufficient knowledge about the defects and still chose to install this meter, acting in reckless and conscious disregard of the potential consequences.

FILED DATE: 7/18/2022 4:06 PM    2022L006413

c) As a result of this breach, Plaintiff's property located at 745 West 151st Street, Orland Park, County of Cook, State of Illinois, was completely destroyed as a result of a fire which originated from the Smart Meter.

d) The Plaintiff suffered extensive damages to personal and commercial property, including damage to the entire building and all the personal belongings located inside the building, which led to the Plaintiff suffering from severe emotional distress which required hospitalization.

34)    As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions on part of the Defendants, a malfunction occurred in Aclara I-210+c system, causing a fire, which led to the total destruction of the building and all personal belongings inside the building at 745 West 151st Street, Orland Park, County of Cook, State of Illinois, incurring heavy destruction to personal property and commercial property and mental, psychological, emotional and personal injuries.

WHEREFORE, the Plaintiff, Joel Habich, as owner and operator of Don's Hot Dogs III inc., respectfully requests a judgment against the Defendants, EXELON AND COMED, in excess of the minimum jurisdictional limits of this Court, which will represent fair and just compensation.

## COUNT III
## (BROUGHT BY PLAINTIFF JOEL HABICH INDIVIDUALLY)
## ACLARA TECHNOLOGIES, LLC
## STRICT LIABILITY – PRODUCT LIABILITY

35)    The Plaintiff adopts, reasserts, and realleges paragraphs 1 through 23 as if set forth herein.

FILED DATE: 7/18/2022 4:06 PM    2022L006413

36)    The Defendant Aclara Technologies LLC, and its predecessors and/or successors in interest, engaged in the business of designing, manufacturing, marketing, selling, distributing, and providing training and other services associated with the Aclara I-210+c smart meter.

37)    The Aclara I-210+c smart meter was expected and did reach the Plaintiff, Joel Habich, without substantial change in its condition as manufactured, supplied, marketed, sold, advertised and otherwise distributed by the Defendant.

38)    The Aclara I-210+c smart meter, as designed and manufactured by the Defendant, was defectively designed and manufactured, unsafe, and unreasonably dangerous for its intended use when it left the Defendants control and at the time of the occurrence for one or more of these reasons:

a)    The Aclara I-210+c smart meter lacked adequate warnings regarding the machine's propensity to malfunction and thereafter start a fire;

b)    The Aclara I-210+c smart meter was defectively designed so as to cause a fire;

c)    The Aclara I-210+c smart meter was improperly manufactured and/or assembled so as to cause a fire;

d)    The components of the Aclara I-210+c smart meter were not designed in a fire-safe manner;

e)    Alternative designs could have included known and well-tested heat-resistant materials including Bakelite on the backplate, voltage suppressors to prevent overheating in case of a voltage spike, and refrained from the use of plastic in a device containing digital circuitry to avoid the possibility of ignition and melting in case of over-heating;

FILED DATE: 7/18/2022 4:06 PM    2022L006413

f) The Aclara I-210+c smart meter did not contain a surge arrestor, which hampered the Smart Meter's ability to withstand voltage surges causing it to be a fundamentally weak meter;

g) The Aclara I-210+c smart meter was equipped with the remote disconnect function, which works by creating an arking fault on purpose, which increases the risk of the Smart Meter to cause a fire, explosion or other combustion events.

h) The Aclara I-210+c smart meter uses digital circuitry, which helps the Defendant track the data usage per meter in a remote fashion. The use of such digital circuitry, mostly made using plastic components, makes the Smart Meter fundamentally and inherently unreasonably susceptible to a higher risk of fire, explosion or other combustion events.

i) The Aclara I-210+c smart meter has fundamental design defects in several of its components such as the lugs, thinner blades and hot sockets, which cause connectivity issues thereby unreasonably increasing their susceptibility to fire, explosion or other combustion events.

j) The components of the Aclara I-210+c smart meter was not manufactured/ assembled in a fire-safe manner;

k) The Aclara I-210+c smart meter was not properly designed to limit potential internal arcing and the possibility of fire;

l) The Aclara I-210+c smart meter was not properly fused electrically to limit potential internal arcing and the possibility of a fire;

m) There was not adequate testing and/or other quality control measures conducted on the Aclara I-210+c smart meter to ensure that it was properly designed to avoid the potential for causing a fire;

n) There was no adequate testing and/or quality control measures conducted on the Aclara I-210+c smart meter to ensure that it was properly manufactured and/or assembled to avoid the potential for causing a fire;

o) The Aclara I-210+c smart meter lacked adequate instructions as to the safe method of installation, set-up, and/or operation as to avoid the potential for causing a fire.

39) As a direct and proximate result of the unreasonably dangerous condition of the Aclara I-210+c smart meter, the Plaintiff Joel Habich, sustained damage and destruction to personal and commercial property and mental, psychological, emotional and personal injuries.

WHEREFORE, the Plaintiff, Joel Habich, respectfully requests a judgment against the Defendant, ACLARA TECHNOLOGIES LLC, in excess of the minimum jurisdictional limits of this Court, which will represent fair and just compensation.

### COUNT IV
### (BROUGHT BY PLAINTIFF JOEL HABICH INDIVIDUALLY)
### ACLARA METERS, LLC
### STRICT LIABILITY – PRODUCT LIABILITY

40) The Plaintiff adopts, reasserts, and realleges paragraphs 1 through 23 as if fully set forth herein.

41) The Defendant Aclara Meters LLC, and its predecessors and/or successors in interest, engaged in the business of designing, manufacturing, marketing, selling, distributing, and providing training and other services associated with the Aclara I-210+c smart meter.

42) The Aclara I-210+c smart meter was expected and did reach the Plaintiff, Joel Habich, without substantial change in its condition as manufactured, supplied, marketed, sold, advertised and otherwise distributed by the Defendant.

43) The subject Aclara I-210+c smart meter, as designed and manufactured by the Defendant, was defectively designed and manufactured, unsafe, and unreasonably dangerous for

13

FILED DATE: 7/18/2022 4:06 PM    2022L006413

FILED DATE: 7/18/2022 4:06 PM   2022L006413

its intended use when it left the Defendants control and at the time of the occurrence for one or more of the following reasons:

a)  The Aclara I-210+c smart meter lacked adequate warnings regarding the machine's propensity to malfunction and thereafter start a fire;

b)  The Aclara I-210+c smart meter was defectively designed so as to cause a fire;

c)  The Aclara I-210+c smart meter was improperly manufactured and/or assembled so as to cause a fire;

d)  The components of the Aclara I-210+c smart meter were not designed in a fire-safe manner;

e)  Alternative designs could have included known and well-tested heat-resistant materials including Bakelite on the backplate, voltage suppressors to prevent overheating in case of a voltage spike, and refrained from the use of plastic in a device containing digital circuitry to avoid the possibility of ignition and melting in case of over-heating;

f)  The Aclara I-210+c smart meter did not contain a surge arrestor, which hampered the Smart Meter's ability to withstand voltage surges thereby causing it to be a fundamentally weak meter;

g)  The Aclara I-210+c smart meter was equipped with the remote disconnect function, which works by creating an arking fault on purpose, which increases the risk of the Smart Meter to cause a fire, explosion or other combustion events.

h)  The Aclara I-210+c smart meter uses digital circuitry, which helps the Defendant track the data usage per meter in a remote fashion. Using such digital circuitry, mostly made using plastic components, makes the Smart Meter fundamentally and inherently unreasonably susceptible to a higher risk of fire, explosion or other combustion events.

14

i) The Aclara I-210+c Smart meter has fundamental design defects in several of its components such as the lugs, thinner blades and hot sockets, which cause connectivity issues thereby unreasonably increasing their susceptibility to fire, explosion or other combustion events.

j) The components of the Aclara I-210+c smart meter was not manufactured/ assembled in a fire-safe manner;

k) The Aclara I-210+c smart meter was not properly designed to limit potential internal arcing and the possibility of fire;

l) The Aclara I-210+c smart meter was not properly fused electrically to limit potential internal arcing and the possibility of a fire;

m) There was not adequate testing and/or other quality control measures conducted on the Aclara I-210+c smart meter to ensure that it was properly designed to avoid the potential for causing a fire;

n) There was no adequate testing and/or quality control measures conducted on the Aclara I-210+c smart meter to ensure that it was properly manufactured and/or assembled to avoid the potential for causing a fire;

o) The Aclara I-210+c smart meter lacked adequate instructions as to the safe and appropriate method of installation, set-up, and/or operation as to avoid the potential for causing a fire.

44)     As a direct and proximate result of the unreasonably dangerous condition of the Aclara I-210+c smart meter, the Plaintiff Joel Habich, sustained damage and destruction to personal and commercial property and mental, psychological, emotional and personal injuries.

FILED DATE: 7/18/2022 4:06 PM   2022L006413

FILED DATE: 7/18/2022 4:06 PM   2022L006413

WHEREFORE, the Plaintiff, Joel Habich, respectfully requests a judgment against the Defendant, ACLARA METERS LLC, in excess of the minimum jurisdictional limits of this Court, which will represent fair and just compensation.

## COUNT V
## COMMONWEALTH EDISON COMPANY AND EXELON CORPORATION WILLFUL AND WANTON AND NEGLIGENCE

**(Brought as a Class Action by Plaintiff Joel Habich, on Behalf of All Other Similarly Situated)**

45)    The Plaintiff and putative class members hereby adopt, reassert, and reallege paragraphs 1 through 23 as if fully set forth herein.

46)    The Plaintiff brings this count as a class action on behalf of other putative class members similarly situated under 735 ILCS 5/2 – 801, to recover damages owed.

47)    The Plaintiff and the putative class members, as a result of the Defendant COMED'S willful, wanton and negligent act of installing and/or maintaining AMI Smart Meters which they knew were defective and were fire hazards, suffered various degrees of personal and/or property damage.

48)    The proposed class of similarly situated persons is defined as

"All individuals who suffered from personal and / or property damage as a direct result of fire caused by arcing, or other combustion events originating from the Smart Meters installed and/or maintained by the Defendant, and their subsidiaries, affiliates, predecessors and/or successors, during the relevant statute of limitations."

49)    Common questions of law and fact exist as to all members of the class and predominate over any questions that affect only individual members of the class. The common questions of law and fact include:

16

FILED DATE: 7/18/2022 4:06 PM    2022L006413

i.   Whether Defendant COMED properly trained their staff to look out for pre-existing issues with connectivity, properly install and replace the old non-AMI meter with new AMI meters;

ii.  Whether Defendant COMED exercised reasonable degree of care and attempted to rectify any known defects in the AMI Smart Meters that made them a fire hazard and/or a direct or proximate source of fires;

iii. Whether Defendant COMED, in complete disregard for the consequences of their actions, still continued to act willfully, wantonly and negligently in installing the defective AMI Smart Meters, even though they had prior knowledge that the Meters were linked to fires;

50)    Defendant COMED operated under a standard practice, as described above, which was willful, wanton and negligent, to deprive the Plaintiff and the putative class members of a right to basic safety against fire hazards solely motivated by their profits, causing various degrees of personal and/or property damage.

51)    Plaintiffs and putative class members were subject to the control of the Defendant COMED, as the right to electricity is an essential commodity, and the plan used by the Defendant, including the replacement of the old non-AMI meter with the AMI Smart Meter and all procedures surrounding the installation of the same, were not subject to consultation or approval of the individual property owners.

52)    At all times relevant hereto, the action of the Defendant COMED, to willfully, wantonly and negligently install the AMI Smart Meters and their failure to exercise reasonable care in installing the Meters, was the direct cause of the various degrees of the personal and/or property damage suffered by the Plaintiff and the putative class members.

17

FILED DATE: 7/18/2022 4:06 PM  2022L006413

53) Plaintiff requests that the Court authorize notice to the members of the class to inform them of the pendency of this action, for the purpose of seeking damages relating to any personal and/or property damage, and other relief as a result of the willful, wanton and negligent actions of the Defendant COMED.

54) Plaintiff estimates that there are over one hundred (100) putative members of the class. The precise members of the class can be ascertained by using Defendant COMMONWEATLH EDISON COMPANY'S service/ client list, because only COMED would be the only entity with a detail record of any instance of fire that was reported in the form of a complaint number and because COMED is the Major, if not the ONLY electricity service provider in the State of Illinois.

Wherefore, Plaintiff Joel Habich seeks the entry of an order of judgment against the Defendant COMED under Count V as follows:

a) Authorize notice at the earliest possible time informing the similarly situated putative class members/ victims that this action has been filed, of the nature of the action, and of their right to join this lawsuit if they have suffered from an injury, personal or property damage, as a direct result of the willful, wanton and negligent actions of COMED.

b) Order the Defendant COMED to counsel a list of all names and last known addresses of all putative class members who currently utilized COMED'S AMI Smart Meter in the United States, and who were subjected to an injury or complained of a fire damage.

c) Declare and find that the Defendant committed one or more of the following acts:

i) Failed to exercise reasonable care and due diligence in the installation of the AMI Smart Meters and/or failing to provide proper training in identifying and rectifying

FILED DATE: 7/18/2022 4:06 PM   2022L006413

pre-existing connectivity issues that could lead to a fire before installation of the new AMI Smart Meter.

ii) Willfully, wantonly and negligently installed the defective AMI Smart Meters knowing that the Meters were known to be fire hazards and that they were directly linked to fire accidents which caused several instances of personal and/or property damage.

d) Order equitable relief mandating that the Defendant cease and desist from any and all further installations until a good-faith effort to rectify known defects has been undertaken and the AMI Smart Meters that are installed in the future comply with all required safety standards and do not pose a threat of being a fire hazard.

e) Award compensatory damages, including damages suffered as a result of personal and/or property damage as a result of a fire accident that is directly linked to the AMI Smart Meter.

f) Award all costs and reasonable attorneys' fees incurred in prosecuting this claim; and

g) For such further relief as this Court deems just and equitable.

**COUNT VI**
**ACLARA TECHNOLOGIES, LLC**
**STRICT LIABILITY – PRODUCT LIABILITY**

**(Brought as a Class Action by Plaintiff Joel Habich, on Behalf of All Others Similarly Situated)**

55)     The Plaintiff adopts, reasserts, and realleges paragraphs 1 through 23 as if fully set forth herein.

56)     The Plaintiff brings this count as a class action on behalf of other putative class members similarly situated, pursuant to 735 ILCS 5/2-801, to recover damages owed.

FILED DATE: 7/18/2022 4:06 PM   2022L006413

57)     The Plaintiff and the putative class members, as a result of the Defendant ACLARA TECHNOLOGIES LLC's manufacturing defect suffered various degrees of personal and/or property damage because of incidents of fire arising out of the manufacturing defect.

58)     The proposed class of similarly situated persons is defined as

"All individuals who suffered from personal and/or property damage as a direct result of fire, caused by arcing or other combustion events originating from the Smart Meters caused by the Defendant's manufacturing defect, and their subsidiaries, affiliates, predecessors and/or successors, or at any time during the relevant statute of limitations."

59)     Common questions of law and fact exist as to all members of the class and predominate over any questions that affect only individual members of the class. The common questions of law and fact include:

a.  Whether Defendant had knowledge about the fact that the lack of Bakelite on the backplate and exclusion of other similar materials from the Smart Meters would cause it to become a fire hazard.

b.  Whether Defendant, in light of that knowledge/ omission, decided to go ahead with cheaper and more flammable materials in its sole pursuit of profits.

c.  Whether Defendant, after having knowledge about incidents of fire due to the above-mentioned manufacturing defects, took any steps in good faith to recall, repair or at the minimum rectify those defects in future Smart Meters that they were manufacturing.

60)     The Plaintiffs and putative class members were subject to the control of the Defendant ACLARA TECHNOLOGIES LLC, as the right to electricity is an essential commodity in everyday life, and the plan used by the DEFENDANT COMED, to use Smart

FILED DATE: 7/18/2022 4:06 PM    2022L006413

Meters manufactured by Defendant ACLARA TECHNOLOGIES LLC was not subject to consultation or approval of the individual property and business owners.

61)     At all times relevant to, the Defendant ACLARA TECHNOLOGIES LLC's Aclara I-210+c smart meter, as designed and manufactured by the Defendant, was defectively designed and manufactured, unsafe, and unreasonably dangerous for its intended use at the time it left the Defendant's control and at the time of the occurrence for one or more of these reasons:

a) The Aclara I-210+c smart meter lacked adequate warnings regarding the machine's propensity to malfunction and thereafter start a fire;

b) The Aclara I-210+c smart meter was defectively designed to cause a fire;

c) The Aclara I-210+c smart meter was improperly manufactured and/or assembled to cause a fire;

d) The components of the Aclara I-210+c smart meter were not designed in a fire-safe manner;

e) Alternative designs could have included known and well-tested heat-resistant materials including Bakelite on the backplate, voltage suppressors to prevent overheating in case of a voltage spike, and refrained from the use of plastic in a device containing digital circuitry to avoid the possibility of ignition and melting in case of over-heating;

f) The Aclara I-210+c smart meter did not contain a surge arrestor, which hampered the Smart Meter's ability to withstand voltage surges thereby causing it to be a fundamentally weak meter;

g) The Aclara I-210+c smart meter was equipped with the remote disconnect function, which works by creating an arking fault on purpose, which increases the risk of the Smart Meter to cause a fire, explosion or other combustion events.

21

FILED DATE: 7/18/2022 4:06 PM    2022L006413

h)  The Aclara I-210+c smart meter uses digital circuitry, which helps the Defendant track the data usage per meter in a remote fashion. The use of such digital circuitry, mostly made using plastic components, makes the Smart Meter fundamentally and inherently unreasonably susceptible to a higher risk of fire, explosion or other combustion events.

i)  The Aclara I-210+c smart meter has fundamental design defects in several of its components such as the lugs, thinner blades and hot sockets, which cause connectivity issues thereby unreasonably increasing their susceptibility to fire, explosion or other combustion events.

j)  The components of the Aclara I-210+c smart meter was not manufactured/ assembled in a fire-safe manner;

k)  The Aclara I-210+c smart meter was not properly designed so as to limit potential internal arcing and the possibility of fire;

l)  The Aclara I-210+c smart meter was not properly fused electrically so as to limit potential internal arcing and the possibility of a fire;

m)  There was not adequate testing and/or other quality control measures conducted on the Aclara I-210+c smart meter so as to ensure that it was properly designed so as to avoid the potential for causing a fire;

n)  There was no adequate testing and/or quality control measures conducted on the Aclara I-210+c smart meter so as to ensure that it was properly manufactured and/or assembled so as to avoid the potential for causing a fire;

o)  The Aclara I-210+c smart meter lacked adequate instructions as to the safe and appropriate method of installation, set-up, and/or operation as to avoid the potential for causing a fire.

FILED DATE: 7/18/2022 4:06 PM   2022L006413

62)     At all times relevant hereto, the action of the Defendant ACLARA
TECHNOLOGIES LLC in defectively manufacturing the Smart Meters, including but not
limited to the Aclara I-210+c, was the direct cause of the personal and/or property damages
suffered by the Plaintiff and the putative class members.

63)     The Plaintiff requests that the Court authorize notice to the members of the class
to inform them of the pendency of this action, for the purpose of seeking damages relating to any
personal and/ or property damage, and other relief as a result of the manufacturing defect caused
by the Defendant ACLARA TECHNOLOGIES LLC.

64)     The Plaintiff estimates that there are over one hundred (100) putative members of
the class. The precise members of class members can be ascertained by using Defendant
ACLARA TECHNOLOGIES LLC's service list which includes a detailed summary of all
models sold and the number of fire complaints they have received either from individual
consumers or from the distributors.

WHEREFORE, the Plaintiff, Joel Habich, seeks a judgment against the Defendant,
ACLARA TECHNOLOGIES LLC, under count VI as follows:

a) Authorize notice at the earliest possible time informing the similarly situated putative
   class members/ victims that this action has been filed, of the nature of the action, and of
   their right to join this lawsuit if they have suffered from an injury, personal and/ or
   property damage, as a direct result of the defective manufacturing of the Smart Meters by
   Defendant ACLARA TECHNOLOGIES LLC.

b) Order the Defendant ACLARA TECHNOLOGIES LLC to counsel a list of all names and
   last known address of its most major distributors and a complaint list containing every

FILED DATE: 7/18/2022 4:06 PM   2022L006413

known complaint that they have ever received relating to a fire because of any model of the Smart Meters manufactured and supplied by them.

c)  Declare and find that the Defendant ACLARA TECHNOLOGIES LLC committed one or more of the following acts:

i)  Failed to exercise reasonable care and due diligence in the manufacture of the Electric Smart Meters, thereby manufacturing a product that made it unsafe and unreasonably dangerous for using it for its intended purpose.

ii)  Failed to take any good faith measures in an attempt to recall, repair or rectify the known defects in their sole pursuit of profits thereby continuing to manufacture and sell Electric Smart Meters with full knowledge that they are potential fire hazards.

d)  Order equitable relief mandating that Defendant cease and desist from any and all further manufacturing until a good faith effort to rectify the known defects that the Defendant is already aware of and to rectify the defects so as to comply with all required safety standards and rigorous testing standards.

e)  Award compensatory damages, including damages suffered as a result of personal and/ or property damage as a result of a fire accident that is directly linked to the Defendant's Electric Smart Meters.

f)  Award all costs and reasonable attorneys' fees incurred in prosecuting this claim; and

g)  For such further relief as this Court deems equitable.

**COUNT VII**
**ACLARA METERS, LLC**
**STRICT LIABILITY – PRODUCT LIABILITY**

**(Brought as a Class Action by Plaintiff Joel Habich, on Behalf of All Others Similarly Situated)**

FILED DATE: 7/18/2022 4:06 PM    2022L006413

65)     The Plaintiff hereby adopts, reasserts, and realleges paragraphs 1 through 23 as if fully set forth herein.

66)     The Plaintiff brings this count as a class action on behalf of other putative class members similarly situated under 735 ILCS 5/2-801, to recover damages owed.

67)     The Plaintiff and the putative class members, because of the Defendant ACLARA METERS LLC's manufacturing defect suffered various degrees of personal and/or property damage because of incidents of fire arising out of the manufacturing defect.

68)     The proposed class of similarly situated persons is defined as

"All individuals who suffered from personal and/or property damage as a direct result of fire, caused by arcing or other combustion events originating from the Smart Meters because of the Defendant's manufacturing defect, and their subsidiaries, affiliates, predecessors and/or successors, at any time during the relevant statute of limitations."

69)     Common questions of law and fact exist as to all members of the class and predominate over any questions that affect only individual members of the class. The common questions of law and fact include:

a.  Whether Defendant had knowledge about the fact that the lack of Bakelite on the backplate and exclusion of other similar materials from the Smart Meters would cause it to become a fire hazard.

b.  Whether Defendant, in light of that knowledge/ omission, decided to go ahead with cheaper and more flammable materials in its sole pursuit of profits.

FILED DATE: 7/18/2022 4:06 PM    2022L006413

c.  Whether Defendant, after having knowledge about incidents of fire due to the above-mentioned manufacturing defects, took any steps in good faith to recall, repair or at the minimum rectify those defects in future Smart Meters that they were manufacturing.

70)  The Plaintiffs and putative class members were subject to the control of the Defendant ACLARA METERS LLC, as the right to electricity is an essential commodity in everyday life, and the plan used by the DEFENDANT COMED, to use Smart Meters manufactured by Defendant ACLARA METERS LLC was not subject to consultation or approval of the individual property and business owners.

71)  At all times relevant to, the Defendant ACLARA METERS LLC's Aclara I-210+c smart meter, as designed and manufactured by the Defendant, was defectively designed and manufactured, unsafe, and unreasonably dangerous for its intended use at the time it left the Defendant's control and at the time of the occurrence for one or more of the following reasons:

a)  The Aclara I-210+c smart meter lacked adequate warnings with respect to the machine's propensity to malfunction and thereafter start a fire;

b)  The Aclara I-210+c smart meter was defectively designed so as to cause a fire;

c)  The Aclara I-210+c smart meter was improperly manufactured and/or assembled so as to cause a fire;

d)  The components of the Aclara I-210+c smart meter were not designed in a fire-safe manner;

e)  Alternative designs could have included known and well-tested heat-resistant materials including Bakelite on the backplate, voltage suppressors to prevent overheating in case of a voltage spike, and refrained from the use of plastic in a device containing digital circuitry to avoid the possibility of ignition and melting in case of over-heating;

FILED DATE: 7/18/2022 4:06 PM   2022L006413

f) The Aclara I-210+c smart meter did not contain a surge arrestor, which hampered the Smart Meter's ability to withstand voltage surges thereby causing it to be a fundamentally weak meter;

g) The Aclara I-210+c smart meter was equipped with the remote disconnect function, which works by creating an arking fault on purpose, which increases the risk of the Smart Meter to cause a fire, explosion or other combustion events.

h) The Aclara I-210+c smart meter uses digital circuitry, which helps the Defendant track the data usage per meter in a remote fashion. The use of such digital circuitry, mostly made using plastic components, makes the Smart Meter fundamentally and inherently unreasonably susceptible to a higher risk of fire, explosion or other combustion events.

i) The Aclara I-210+c smart meter has fundamental design defects in several of its components such as the lugs, thinner blades and hot sockets, which cause connectivity issues thereby unreasonably increasing their susceptibility to fire, explosion or other combustion events.

j) The components of the Aclara I-210+c smart meter was not manufactured/ assembled in a fire-safe manner;

k) The Aclara I-210+c smart meter was not properly designed so as to limit potential internal arcing and the possibility of fire;

l) The Aclara I-210+c smart meter was not properly fused electrically so as to limit potential internal arcing and the possibility of a fire;

m) There was not adequate testing and/or other quality control measures conducted on the Aclara I-210+c smart meter so as to ensure that it was properly designed so as to avoid the potential for causing a fire;

FILED DATE: 7/18/2022 4:06 PM    2022L006413

n)  There was no adequate testing and/or quality control measures conducted on the Aclara I-210+c smart meter so as to ensure that it was properly manufactured and/or assembled so as to avoid the potential for causing a fire;

o)  The Aclara I-210+c smart meter lacked adequate instructions as to the safe and appropriate method of installation, set-up, and/or operation as to avoid the potential for causing a fire.

72)  At all times relevant hereto, the action of the Defendant ACLARA METERS LLC in defectively manufacturing the Smart Meters, including but not limited to the Aclara I-210+c, was the direct cause of the personal and/or property damages suffered by the Plaintiff and the putative class members.

73)  The Plaintiff requests that the Court authorize notice to the members of the class to inform them of the pendency of this action, for the purpose of seeking damages relating to any personal and/ or property damage, and other relief as a result of the manufacturing defect caused by the Defendant ACLARA METERS LLC.

74)  The Plaintiff estimates that there are over one hundred (100) putative members of the class. The precise members of the class can be ascertained by using Defendant ACLARA METERS LLC's service list which includes a detailed summary of all models sold and the number of fire complaints that they have received either from individual consumers or from the distributors.

WHEREFORE, the Plaintiff, Joel Habich, seeks a judgment against the Defendant, ACLARA METERS LLC, under count VII as follows:

a)  Authorize notice at the earliest possible time informing the similarly situated putative class members/ victims that this action has been filed, of the nature of the action, and of

FILED DATE: 7/18/2022 4:06 PM   2022L006413

their right to join this lawsuit if they have suffered from an injury, personal and/ or property damage, as a direct result of the defective manufacturing of the Smart Meters by Defendant ACLARA METERS LLC.

b) Order the Defendant ACLARA METERS LLC to counsel a list of all names and last known address of its most major distributors and a complaint list containing every known complaint that they have ever received relating to a fire because of any model of the Smart Meters manufactured and supplied by them.

c) Declare and find that the Defendant ACLARA METERS LLC committed one or more of the following acts:

   i) Failed to exercise reasonable care and due diligence in the manufacture of the Electric Smart Meters, thereby manufacturing a product that made it unsafe and unreasonably dangerous for using it for its intended purpose.

   ii) Failed to take any good faith measures in an attempt to recall, repair or rectify the known defects in their sole pursuit of profits thereby continuing to manufacture and sell Electric Smart Meters with full knowledge that they are potential fire hazards.

d) Order equitable relief mandating that Defendant cease and desist from any and all further manufacturing until a good faith effort to rectify the known defects that the Defendant is already aware of and to rectify the defects so as to comply with all required safety standards and rigorous testing standards.

e) Award compensatory damages, including damages suffered as a result of personal and/ or property damage as a result of a fire accident that is directly linked to the Defendant's Electric Smart Meters.

f) Award all costs and reasonable attorneys' fees incurred in prosecuting this claim; and

FILED DATE: 7/18/2022 4:06 PM   2022L006413

g)  For such further relief as this Court deems equitable.

JURY DEMANDED AS TO ALL COUNTS.

Respectfully submitted,

By: Dennis H. Stefanowicz, Jr.

/s/ Dennis H. Stefanowicz, Jr.
GLEN J. DUNN &
ASSOCIATES
Counsel for Plaintiff

Glen J. Dunn
Dennis H. Stefanowicz, Jr. - 6210166
GLEN J. DUNN & ASSOCIATES
Attorneys for the Plaintiff
One East Wacker Drive, Suite 2510
Chicago, Illinois - 60601

30

FILED
7/18/2022 4:06 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022L006413
Calendar, D

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| JOEL HABICH, individually and on behalf of a class of persons similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. **2022L006413** |
| v. | ) ) ) | JURY DEMANDED |
| EXELON CORPORATION, COMMONWEALTH EDISON COMPANY, ACLARA TECHNOLOGIES, LLC AND ACLARA METERS LLC | ) ) ) ) ) ) | |
| Defendants. | ) | |

_____

## **AFFIDAVIT**

I, Dennis Stefanowicz, first being duly sworn on oath, depose and state as follows:

1.      The damages claimed by the Plaintiff (s) exceed the sum of FIFTY THOUSAND DOLLARS ($50,000).

FURTHER AFFIANT SAYETH NOT.

/s/ Dennis H. Stefanowicz, Jr.
DENNIS H STEFANOWICZ
ATTORNEY FOR PLAINTIFF

## **VERIFICATION**

Under penalties as provided by law pursuant to 735 ILCS 5/1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief as to such matters the undersigned certifies as aforesaid that he/she verily believes the same to be true.

/s/ Dennis H. Stefanowicz, Jr.
DENNIS H STEFANOWICZ

Dennis H. Stefanowicz, Jr. - 6210166
GLEN J. DUNN & ASSOCIATES
Attorneys for the Plaintiff
One East Wacker Drive, Suite 2510
Chicago, Illinois - 60601

FILED DATE: 7/18/2022 4:06 PM   2022L006413