UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOEL HABICH, individually and on behalf of a class of persons similarly situated,<br><br>Plaintiffs,<br><br>   v.<br><br>EXELON CORPORATION, COMMONWEALTH EDISON COMPANY, ACLARA TECHNOLOGIES, LLC and ACLARA METERS, LLC,<br><br>                Defendants. | Case No. 22 cv 4438<br><br>Jury Demanded by Plaintiff<br><br>Removed from Circuit Court of Cook County, Illinois<br>Case No. 2022 L 006413 |

## DEFENDANTS ACLARA METERS, LLC'S
## ANSWER TO CLASS ACTION COMPLAINT

NOW COMES Defendant, ACLARA METERS, LLC, ("Aclara Meters") through its counsel, Goldberg Segalla LLP, and for its Answer to Plaintiff's Class Action Complaint, states as follows:

## THE PARTIES AND JURISDICTION

1.     Defendant, Exelon Corporation, is an American Fortune 100 Energy Company, incorporated in the State of Pennsylvania, headquartered in Chicago at 10 South Dearborn Street, Chicago, IL 60603. Defendant Exelon Corporation owns subsidiary company Defendant Commonwealth Edison Company, an electric utility company, headquartered at 442 South LaSalle Street, Chicago, IL 60605. Defendant, Commonwealth Edison Company, regularly and continuously did business within the State of Illinois, by delivering power to over 3.8 million homes and businesses across Illinois. Plaintiffs are residents in the State of Illinois, who utilized services from Defendant Commonwealth Edison Company and received electric supply and lived and/or owned residential and commercial buildings supplied with Commonwealth Edison

Company owned Electric Smart Meters. Defendant Aclara Technologies, LLC (a subsidiary of Hubbell Incorporated), is a supplier of Smart Infrastructure Solutions (SIS) to water, gas and electric utilities, headquartered at 77 West Port Plaza Drive, St. Louis, MO 63146 and is one manufacturer of the Electric Smart Meters supplied by Defendant Commonwealth Edison Company, including the Electric Smart Meter supplied to the Plaintiff. Defendant, Aclara Technologies LLC, regularly and continuously did business within the State of Illinois, by marketing, selling, distributing, and providing training and other services associated with the supply of Smart Infrastructure Solutions (SIS) to water, gas and electric utilities, including but not limited to the I-210 line of single phase residential electric meters. Defendnat Aclara Meters LLC (a subsidiary of Defendant Aclara Technologies, LLC), is a supplier of Smart Infrastructure Solutions (SIS), with its principal office at 40 Waterview Drive, Shelton, CT 06484, and is a manufacturer and distributor of the Electric Smart Meters supplied by Defendant Commonwealth Edison Company, including the Electric Smart Meter supplied to the Plaintiff. Defendant, Aclara Meters LLC, regularly and continuously did business within the State of Illinois, by manufacturing, marketing, distributing and providing training and other services associated with the supply of Smart Infrastructure Solutions to water, gas and electric utilities.

**ANSWER:   Aclara Meters admits that it is a manufacturer and distributor of electric smart meters. Aclara Meters further admits that it does business by way of selling in the State of Illinois. Aclara Meters denies that it is a subsidiary of Aclara Technologies, LLC. Aclara Meters further denies that Aclara Technologies LLC markets, sells, distributes and provides training and other services for the I-210 line of single phase residential electric meters. Aclara Meters has insufficient information regarding the remaining allegations of**

paragraph 1 and therefore neither admits nor denies those allegations and demands strict proof thereof.

2. Plaintiff brings Count I through IV as an individual action under 735 ILCS 5/2-209, being a resident of the State of Illinois and as a person who owned and operated a business within the State of Illinois. Plaintiff brings Count V, VI and VII as a class action under 735 ILCS 5/2-801.

**ANSWER: Aclara Meters admits that in Counts I-IV Plaintiff brings this as an individual action pursuant to 735 ILCS 5/2-209. Aclara Meters admits that Plaintiff appears to bring Counts V – VII as a putative class action pursuant to 735 ILCS 5/2-801. Aclara Meters denies that the requirements of the class certification under 735 ILCS 5/2-801 or Federal Rule of Civil Procedure 23 are met here. Aclara Meters denies that the certification of the putative class could be granted. Aclara Meters denies the remaining allegations of paragraph 2.**

3. Plaintiff Joel Habich is a resident and citizen of Cook County, Illinois, and his commercial business Don's Hot Dogs III, was deriving electric supply from Defendant Commonwealth Edison Company, which had installed Defendant Aclara Technologies LLC's Electric Smart Meter in Joel Habich's property.

**ANSWER: Aclara Meters denies that an electronic smart meter manufactured and sold by Aclara Technologies LLC was installed in the Plaintiff's property. Aclara Meters has insufficient information regarding the remaining allegations of paragraph 3 to answer and therefore neither admits nor denies same but demands strict proof.**

4. At all relevant times, the Plaintiff and each of the putative class members Plaintiff Joel Habich seeks to represent have been or are utilizing electricity services from Defendant

Commonwealth Edison Company and/or have suffered personal and/or property damages because of using Defendant Aclara Technologies LLC's Electric Smart Meters.

**ANSWER:     Aclara Meters denies that Plaintiff and the putative class members used Aclara Technologies, LLC's electric smart meters as meters were not manufactured or sold by that entity. Aclara Meters has insufficient information to answer the remaining allegations of paragraph 4 and therefore neither admits nor denies same but demands strict proof.**

<u>**BACKGROUND FACTS**</u>

5.     On July 29, 2020, Plaintiff Joel Habich, owned and operated Don's Hot Dogs III, Inc., a commercial business at 7245 West 151st Street, Orland Park, County of Cook, State of Illinois.

**ANSWER:     Aclara Meters has insufficient information to form a belief about the truth of the allegations of paragraph 5 and therefore neither admits nor denies same but demands strict proof.**

6.     Said commercial business was operated from a single-story masonry building at the location. The building was owned by the Plaintiff.

**ANSWER:     Aclara Meters has insufficient information to form a belief about the truth of the allegations of paragraph 6 and therefore neither admits nor denies same but demands strict proof.**

7.     The building at the location was supplied with electrical service from Defendant Commonwealth Edison, ("Comed"), a subsidiary business of Chicago based Defendant Exelon Corporation ("Exelon"), who installed and maintained the electrical service to the building. The electrical service included an Aclara I-210+c electrical smart meter, bearing Meter No.

273403352_G, a smart meter housing unit, a pedestal and a 2-inch supply conduit that attached to the bottom of the smart meter housing, which was installed on April 6, 2018.

**ANSWER:    Aclara Meters has insufficient information to form a belief about the truth of the allegations of paragraph 7 and therefore neither admits nor denies same but demands strict proof.**

8.      The smart meter and conduit were affixed and on the south exterior wall of the building. The 2-inch conduit extended down from the meter housing into the ground and connected underground to the external transformer located approximately 10 feet from the south exterior wall, smart meter housing and conduit. Said service was grounded to a copper grounding rod attached to a copper clamp with a galvanized bolt.

**ANSWER:    Aclara Meters has insufficient information to form a belief about the truth of the allegations of paragraph 8 and therefore neither admits nor denies same but demands strict proof.**

9.      On July 29, 2020, at approximately 00:40 hours, a structural fire started and destroyed the commercial restaurant at 7245 West 151st Street, Orland Park, County of Cook, State of Illinois and said fire and damages were witnessed by the Plaintiff Joel Habich.

**ANSWER:    Aclara Meters has insufficient information to form a belief about the truth of the allegations of paragraph 9 and therefore neither admits nor denies same but demands strict proof.**

10.     Multiple agencies, including the Office of the Illinois State Fire Marshall investigated the cause and origin of the fire.

**ANSWER:    Aclara Meters has insufficient information to form a belief about the truth of the allegations of paragraph 10 and therefore neither admits nor denies same but demands strict proof.**

11.    The area of origin where the fire began, was the south exterior wall of the building at the ComEd electrical smart meter and 2-inch supply conduit.

**ANSWER:    Aclara Meters has insufficient information to form a belief about the truth of the allegations of paragraph 11 and therefore neither admits nor denies same but demands strict proof.**

12.    The ignition source of the fire was the energized 120/240 single-phased electrical service from the ComEd pad mounted transformer back to the exterior mounted smart meter pedestal and conduit service chase way attached to the south exterior wall of the building.

**ANSWER:    Aclara Meters denies the allegations contained in paragraph 12.**

13.    Defendant ComEd arrived at the scene and investigated and acknowledged the same under ComEd "ticket" number #06380439. The work and investigation done by Nicor (gas provider) was done under an unknown "ticket" or incident number.

**ANSWER:    Aclara Meters has insufficient information to form a belief about the truth of the allegations of paragraph 13 and therefore neither admits nor denies same but demands strict proof.**

14.    Following the incident, besides the state and local agencies that investigated this occurrence, the ComEd retained "Hansen Engineering Services, Inc.", to investigate the cause and origin of the July 29, 2020 fire and has performed an analysis inclusive of partially destructive testing of the artifacts and other evidence.

**ANSWER:    Aclara Meters has insufficient information to form a belief about the truth of the allegations of paragraph 14 and therefore neither admits nor denies same but demands strict proof.**

15.    Because of the fire, the building at 7245 West 151st Street, Orland Park, County of Cook, State of Illinois, was destroyed and rendered unusable causing the Plaintiff damages and injuries, including but not limited to lost business, property damage and mental, psychological, emotional and personal injuries caused by Defendant's actions.

**ANSWER:    Aclara Meters has insufficient information to form a belief about the truth of the allegations of paragraph 15 and therefore neither admits nor denies same but demands strict proof.**

16.    Defendants Exelon and ComEd have been approved by the Illinois Commerce Commission to implement a Smart Grid Advanced Metering Infrastructure Deployment Plan, a multi-million-dollar plan to upgrade and modernize the electric delivery system.

**ANSWER:    Aclara Meters has insufficient information to form a belief about the truth of the allegations of paragraph 16 and therefore neither admits nor denies same but demands strict proof.**

17.    Under said approval, Defendant ComEd installed new AMI smart meters and replacing the older non-AMI meters and provided the consumer with a General Terms and Conditions, which is marked as Exhibit 2.

**ANSWER:    Aclara Meters has insufficient information to form a belief about the truth of the allegations of paragraph 17 and therefore neither admits nor denies same but demands strict proof.**

18.     Defendant ComEd, unambiguously states that all mater-related facilities provided by the Company at a retail customer's premises, to measure electric service provided to the retail customer, unless otherwise expressly provided, are the property of the Company.

**ANSWER:     Aclara Meters has insufficient information to form a belief about the truth of the allegations of paragraph 18 and therefore neither admits nor denies same but demands strict proof.**

19.     Defendant ComEd, in its General Terms and Conditions states that the Company owns, installs, operates, replaces and maintains meter-related facilities in the provision of electric service to the retail customer and that such installation would be governed by the Terms contained in the General Terms and Conditions.

**ANSWER:     Aclara Meters has insufficient information to form a belief about the truth of the allegations of paragraph 19 and therefore neither admits nor denies same but demands strict proof.**

20.     Defendant ComEd, states that a trained meter installed visually inspects the meter fitting prior to installing the AMI meter and only where the installer identifies no lack of compliance with the applicable Company and/or Safety Standards, the non-AMI meter is removed and replaced with the AMI meter.

**ANSWER:     Aclara Meters has insufficient information to form a belief about the truth of the allegations of paragraph 20 and therefore neither admits nor denies same but demands strict proof.**

21.     Defendant ComEd willfully, wantonly and negligently installed defective smart meters in several properties, after identifying those properties met the applicable safety standards,

even though they had prior knowledge that the AMI Smart Meters they installed had a history of being fire hazards.

**ANSWER:** **Aclara Meters has insufficient information to form a belief about the truth of the allegations of paragraph 21 and therefore neither admits nor denies same but demands strict proof.**

22.     Defendant ComEd, as early as 2012 knew of the AMI Smart Meters causing "small fires" and there were several instances where ComEd acknowledged that the fire was directly linked to the Smart Meter but did not stop or pause installation to rectify the known defects.

**ANSWER:** **Aclara Meters has insufficient information to form a belief about the truth of the allegations of paragraph 22 and therefore neither admits nor denies same but demands strict proof.**

23.     Defendant ComEd issued a statement, given those incidents of fire, that technicians would look out for and modify the connection point when needed during the deployment of smart meters. However, there have been several incidents since 2012, where the same issues regarding the lack of the Bakelite backplate, the remote connectivity function and the sockets have caused a fire, leading to various degrees of personal and property damages.

**ANSWER:** **Aclara Meters has insufficient information to form a belief about the truth of the allegations of paragraph 23 and therefore neither admits nor denies same but demands strict proof.**

**COUNT I**
**(BROUGHT BY PLAINTIFF JOEL HABICH INDIVIDUALLY)**
**COMMONWEALTH EDISON COMPANY AND EXELON CORPORATION WILLFUL**
**AND WANTON AND NEGLIGENCE**

Defendant Aclara Meters makes no answer to Count I of Plaintiff's Complaint as this Count is not directed against Aclara Meters. To the extent any allegations are inferred to be directed against Aclara Meters, Aclara Meters denies all allegations.

**COUNT II**
**(BROUGHT BY PLAINTIFF JOEL HABICH INDIVIDUALLY)**
**COMMONWEALTH EDISON COMPANY AND EXELON CORPORATION**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

Defendant Aclara Meters makes no answer to Count II of Plaintiff's Complaint as this Count is not directed against Aclara Meters. To the extent any allegations are inferred to be directed against Aclara Meters, Aclara Meters denies all allegations.

**COUNT III**
**(BROUGHT BY PLAINTIFF JOEL HABICH INDIVIDUALLY)**
**ACLARA TECHNOLOGIES, LLC**
**STRICT LIABILITY – PRODUCT LIABILITY**

Defendant Aclara Meters makes no answer to Count III of Plaintiff's Complaint as this Count is not directed against Aclara Meters. To the extent any allegations are inferred to be directed against Aclara Meters, Aclara Meters denies all allegations.

**COUNT IV**
**(BROUGHT BY PLAINTIFF JOEL HABICH INDIVIDUALLY)**
**ACLARA METERS, LLC**
**STRICT LIABILITY – PRODUCT LIABILITY**

40.     The Plaintiff adopts, reasserts, and realleges paragraphs 1 through 23 as if set forth herein.

**ANSWER:     Aclara Meters reasserts and realleges its answers to paragraphs 1 through 23 of Plaintiff's Complaint as though fully set forth herein.**

41.     The Defendant Aclara Meters LLC, and its predecessors and/or successors in interest, engaged in the business of designing, manufacturing, marketing, selling, distributing, and providing training and other services associated with the Aclara I-210+c smart meter.

**ANSWER:     Aclara Meters admits that it is in the business of designing, manufacturing, marketing and selling the Aclara I-210+c Smart Meter. Aclara Meters has insufficient information regarding the remaining allegations of paragraph 41 and therefore neither admits nor denies same but demands strict proof.**

42.     The Aclara I-210+c smart meter was expected and did reach the Plaintiff, Joel Habich, without substantial change in its condition as manufactured, supplied, marketed, sold, advertised and otherwise distributed by the Defendant.

**ANSWER:     Aclara Meters denies each and every allegation of paragraph 42.**

43.     The subject Aclara I-210+c smart meter, as designed and manufactured by the Defendant, was defectively designed and manufactured, unsafe, and unreasonably dangerous for its intended use when it left the Defendants control and at the time of the occurrence for one or more of these reasons:

a)     The Aclara I-210+c smart meter lacked adequate warnings regarding the machine's propensity to malfunction and thereafter start a fire;

b)     The Aclara I-210+c smart meter was defectively designed so as to cause a fire;

c)     The Aclara I-210+c smart meter was improperly manufactured and/or assembled so as to cause a fire;

d)     The components of the Aclara I-210+c smart meter were not designed in a fire-safe manner;

e)     Alternative designs could have included known and well-tested heat-resistant materials including Bakelite on the backplate, voltage suppressors to prevent overheating in case of a voltage spike, and refrained from the use of plastic in a device containing digital circuitry to avoid the possibility of ignition and melting in case of over-heating;

f)     The Aclara I-210+c smart meter did not contain a surge arrestor, which hampered the Smart Meter's ability to withstand voltage surges causing it to be a fundamentally weak meter;

g)     The Aclara I-210+c smart meter was equipped with the remote disconnect function, which works by creating an arcing fault on purpose which increases the risk of the Smart Meter to cause a fire, explosion or other combustion events.

h)     The Aclara I-210+c smart meter uses digital circuitry, which helps the Defendant track the data usage per meter in a remote fashion. The use of such digital circuitry, mostly made using plastic components, makes the Smart Meter fundamentally and inherently unreasonably susceptible to a higher risk of fire, explosion or other combustion events.

i)     The Aclara I-210+c smart meter has fundamental design defects in several of its components such as the lugs, thinner blades and hot sockets, which cause connectivity issues thereby unreasonably increasing their susceptibility to fire, explosion or other combustion events.

j)     The components of the Aclara I-210+c smart meter was not manufactured/assembled in a fire-safe manner;

k)    The Aclara I-210+c smart meter was not properly designed to limit potential internal arcing and the possibility of fire;

l)    The Aclara I-210+c smart meter was not properly fused electrically to limit potential internal arcing and the possibility of a fire;

m)    There was not adequate testing and/or other quality control measures conducted on the Aclara I-210+c smart meter to ensure that it was properly designed to avoid the potential for causing a fire.

n)    There was no adequate testing and/or quality control measures conducted on the Aclara I-210+c smart meter to ensure that it was properly manufactured and/or assembled to avoid the potential for causing a fire;

o)    The Aclara I-210+c smart meter lacked adequate instructions as to the safe method of installation, set-up, and/or operation as to avoid the potential for causing a fire.

**ANSWER:**    **Aclara Meters denies each and every allegation of paragraph 43 and also denies the allegations of subparagraphs 43(a) through 43(o) inclusive.**

44.    As a direct and proximate result of the unreasonably dangerous condition of the Aclara I-210+c smart meter, the Plaintiff Joel Habich, sustained damage and destruction to personal and commercial property and mental, psychological, emotional and personal injuries.

**ANSWER:**    **Aclara Meters denies each and every allegation of paragraph 44.**

**COUNT V**
**COMMONWEALTH EDISON COMPANY AND EXELON CORPORATION**
**WILLFUL AND WANTON AND NEGLIGENCE**

Defendant Aclara Meters makes no answer to Count V of Plaintiff's Complaint as this Count is not directed against Aclara Meters. To the extent any allegations are inferred to be directed against Aclara Meters, Aclara Meters denies all allegations.

**COUNT VI**
**ACLARA TECHNOLOGIES, LLC**
**STRICT LIABILITY – PRODUCT LIABILITY**

**(Brought as a Class Action by Plaintiff Joel Habich,**
**on Behalf of All Others Similarly Situated)**

Defendant Aclara Meters makes no answer to Count VI of Plaintiff's Complaint as this Count is not directed against Aclara Meters. To the extent any allegations are inferred to be directed against Aclara Meters, Aclara Meters denies all allegations.

**COUNT VII**
**ACLARA METERS, LLC**
**STRICT LIABILITY – PRODUCT LIABILITY**

**(Brought as a Class Action by Plaintiff Joel Habich,**
**on Behalf of All Others Similarly Situated)**

65.    The Plaintiff adopts, reasserts, and realleges paragraphs 1 through 23 as if fully set forth herein.

**ANSWER:    Aclara Meters hereby adopts, reasserts and realleges its answers to paragraphs 1 through 23 as though fully set forth herein.**

66.    The Plaintiff brings this count as a class action on behalf of other putative class members similarly situated, pursuant to 735 ILCS 5/2-801, to recover damages owed.

**ANSWER:    Aclara Meters admits that Plaintiff brings Count VII as a putative class action pursuant to 735 ILCS 5/2-801. Aclara Meters denies that the requirements for class certification under 735 ILCS 5/2-801 or Federal Rule of Civil Procedure 23 are met. Aclara Meters further denies that certification of the putative class action could be granted and denies all remaining allegations of paragraph 66.**

67. The Plaintiff and the putative class members, as a result of the Defendant Aclara Meters LLC's manufacturing defect suffered various degrees of personal and/or property damage because of incidents of fire arising out of the manufacturing defect.

**ANSWER:    Aclara Meters denies each and every allegation of paragraph 67.**

68. The proposed class of similarly situated persons is defined as "All individuals who suffered from personal and/or property damage as a direct result of fire, caused by arcing or other combustion events originating from the Smart Meters caused by the Defendant's manufacturing defect, and their subsidiaries, affiliates, predecessors and/or successors, or at any time during the relevant statute of limitations."

**ANSWER:    Aclara Meters admits that Plaintiff purports to bring Count VII on behalf of an alleged class as defined in paragraph 68. Aclara Meters denies that there are any individuals in the purported class who suffered from personal injury or property damage as a result of fire, arcing, or other combustion events related to smart meters. Aclara Meters further denies that its smart meters have a manufacturing defect and further denies the remaining allegations of paragraph 68.**

69. Common questions of law and fact exist as to all members of the class and predominate over any questions that affect only individual members of the class. The common questions of law and fact include:

a. Whether Defendant had knowledge about the fact that the lack of Bakelite on the backplate and exclusion of other similar materials from the Smart Meters would cause it to become a fire hazard.

b. Whether Defendant, in light of that knowledge/omission, decided to go ahead with cheaper and more flammable materials in its sole pursuit of profits.

    c.      Whether Defendant, after having knowledge about incidents of fire due to the above-mentioned manufacturing defects, took any steps in good faith to recall, repair or at the minimum rectify those defects in future Smart Meters that they were manufacturing.

**ANSWER:    Aclara Meters denies that the requirements for class certification under 735 ILCS 5/2-801 or Federal Rule of Civil Procedure 23 are met here. Aclara Meters denies that any of the subparagraphs of paragraph 69 allege a common question within the meaning of 735 ILCS 5/2-801 or Federal Rules of Civil Procedure 23. Aclara Meters denies that any common questions predominate over individual question in this action. Aclara Meters denies that certification of the putative class could be granted and denies all remaining allegations of paragraph 69.**

70.      The Plaintiffs and putative class members were subject to the control of the Defendant Aclara Meters LLC, as the right to electricity is an essential commodity in everyday life, and the plan used by the Defendant ComEd, to use Smart Meters manufactured by Defendant Aclara Meters LLC was not subject to consultation or approval of the individual property and business owners.

**ANSWER:    Aclara Meters denies each and every allegation of paragraph 70.**

71.      At all times relevant to, the Defendant Aclara Meters LLC's Aclara I-210+c smart meter, as designed and manufactured by the Defendant, was defectively designed and manufactured, unsafe, and unreasonably dangerous for its intended use at the time it left the Defendant's control and at the time of the occurrence for one or more of these reasons:

    a)      The Aclara I-210+c smart meter lacked adequate warnings regarding the machine's propensity to malfunction and thereafter start a fire;

b)    The Aclara I-210+c smart meter was defectively designed to cause a fire;

c)    The Aclara I-210+c smart meter was improperly manufactured and/or assembled to cause a fire;

d)    The components of the Aclara I-210+c smart meter were not designed in a fire-safe manner;

e)    Alternative designs could have included known and well-tested heat-resistant materials including Bakelite on the backplate, voltage suppressors to prevent overheating in case of a voltage spike, and refrained from the use of plastic in a device containing digital circuitry to avoid the possibility of ignition and melting in cae of over-heating;

f)    The Aclara I-210+c smart meter did not contain a surge arrestor, which hampered the Smart Meter's ability to withstand voltage surges thereby causing it to be a fundamentally weak meter;

g)    The Aclara I-210+c smart meter was equipped with the remote disconnect function, which works by creating an arking fault on purpose, which increases the risk of the Smart Meter to cause a fire, explosion or other combustion events.

h)    The Aclara I-210+c smart meter uses digital circuitry, which helps the Defendant track the data usage per meter in a remote fashion. The use of such digital circuitry, mostly made using plastic components, makes the Smart Meter fundamentally and inherently unreasonably susceptible to a higher risk of fire, explosion or other combustion events.

i)    The Aclara I-210+c smart meter has fundamental design defects in several of its components such as the lugs, thinner blades and hot sockets, which cause

connectivity issues thereby unreasonably increasing their susceptibility to fire, explosion or other combustion events.

j)   The components of the Aclara I-210+c smart meter was not manufactured/assembled in a fire-safe manner;

k)   The Aclara I-210+c smart meter was not properly designed so as to limit potential internal arcing and the possibility of fire;

l)   The Aclara I-210+c smart meter was not properly fused electrically so as to limit potential internal arcing and the possibility of a fire;

m)   There was not adequate testing and/or other quality control measures conducted on the Aclara I-210+c smart meter so as to ensure that it was properly designed so as to avoid the potential for causing a fire;

n)   There was no adequate testing and/or quality control measures conducted on the Aclara I-210+c smart meter so as to ensure that it was properly manufactured and/or assembled so as to avoid the potential for causing a fire;

o)   The Aclara I-210+c smart meter lacked adequate instructions as to the safe and appropriate method of installation, set-up, and/or operation as to avoid the potential for causing a fire.

**ANSWER:   Aclara Meters denies each and every allegation of paragraph 71 including subparagraphs 71 (a) through 71 (o) inclusive.**

72.   At all times relevant hereto, the action of the Defendant Aclara Meters LLC in defectively manufacturing the Smart Meters, including but not limited to the Aclara I-210+c, was the direct cause of the personal and/or property damages suffered by the Plaintiff and the putative class members.

**ANSWER:** **Aclara Meters denies each and every allegation of paragraph 72.**

73.     The Plaintiff requests that the Court authorize notice to the members of the class to inform them of the pendency of this action, for the purpose of seeking damages relating to any personal and/or property damage, and other relief as a result of the manufacturing defect caused by the Defendant Aclara Meters LLC.

**ANSWER:** **Aclara Meters denies each and every allegation of paragraph 73.**

74.     The Plaintiff estimates that there are over one hundred (100) putative members of the class. The precise members of class members can be ascertained by using Defendant Aclara Meters LLC's service list which includes a detailed summary of all models sold and the number of fire complaints they have received either from individual consumers or from the distributors.

**ANSWER:** **Aclara Meters denies each and every allegation of paragraph 74.**

WHEREFORE, the Plaintiff, Joel Habich, seeks a judgment against the Defendant, Aclara Meters LLC, under Count VI as follows:

a)     Authorize notice at the earliest possible time informing the similarly situated putative class members/victims that this action has been filed, of the nature of the action, and of their right to join this lawsuit if they have suffered from an injury, personal and/or property damage, as a direct result of the defective manufacturing of the Smart Meters by Defendant Aclara Meters LLC.

b)     Order the Defendant Aclara Meters LLC to counsel a list of all names and last known address of its most major distributors and a complaint list containing every known complaint that they have ever received relating to a fire because of any model of the Smart Meters manufactured and supplied by them.

c) Declare and find that the Defendant Aclara Meters LLC committed one or more of the following acts:

    i) Failed to exercise reasonable care and due diligence in the manufacture of the Electric Smart Meters, thereby manufacturing a product that made it unsafe and unreasonably dangerous for using it for its intended purpose.

    ii) Failed to take any good faith measures in an attempt to recall, repair or rectify the known defects in their sole pursuit of profits thereby continuing to manufacture and sell Electric Smart Meters with full knowledge that they are potential fire hazards.

d) Order equitable relief mandating that Defendant cease and desist from any and all further manufacturing until a good faith effort to rectify the known defects that the Defendant is already aware of and to rectify the defects so as to comply with all required safety standards and rigorous testing standards.

e) Award compensatory damages, including damages suffered as a result of personal and/or property damage as a result of a fire accident that is directly linked to the Defendant's Electric Smart Meters.

f) Award all costs and reasonable attorneys' fees incurred in prosecuting this claim; and

g) For such further relief as this Court deems equitable.

**ANSWER: Aclara Meters denies that Plaintiff is entitled to any relief as set forth in Plaintiff's Wherefore Clause in Count VII, including subparagraphs (a) through (g) inclusive. Aclara Meters further requests this Court to dismiss Plaintiff's complaint and award Aclara Meters its costs, attorneys' fees and such other relief as the court deems just and equitable.**

### AFFIRMATIVE DEFENSES

### ACLARA METERS' FIRST AFFIRMATIVE DEFENSE

### CONTRIBUTORY NEGLIGENCE – 735 ILCS 5/2-1116

For its First Affirmative Defense to the allegations in Plaintiff's Complaint at Law, Aclara Meters states that Joel Habich was contributorily negligent in one or more of the following ways, each of which or any combination of which was a proximate cause or the sole proximate cause of the Plaintiff's damages and losses, if any:

(a) Failed to adequately maintain the premises at 7245 West 151st Street, Orland Park, Illinois, ("Premises") so as to prevent damage to the Premises;

(b) Failed to inspect customer-owned equipment and wiring at the Premises;

(c) Failed to properly maintain the customer-owned equipment and wiring at the Premises;

(d) Placed combustible materials in an area that was adjacent to the electrical meter for the Premises;

(e) Allowed combustible materials to be located in an area that was adjacent to the electrical meter for the Premises;

(f) Placed combustible materials in an area that was adjacent to the gas meter for the Premises;

(g) Allowed combustible materials to be located in an area that was adjacent to the gas meter for the Premises; and

(h) Was otherwise negligent or careless.

WHEREFORE, Defendant, ACLARA METERS, prays that judgment be entered in its favor and against the Plaintiff JOEL HABICH for the reason that the conduct of JOEL HABICH

was more than 50% of the proximate cause of the alleged damages and losses, if any, for which recovery is sought; in the alternative, should the contributorily negligent conduct on the part of JOEL HABICH be 50% or less of the proximate cause of the damages and losses, if any, for which recovery is sought, the Defendant, ACLARA METERS, prays that any verdict against it be reduced in proportion to the percentage that the contributorily negligent conduct of JOEL HABICH caused or contributed to the damages and losses, if any.

### SECOND AFFIRMATIVE DEFENSE (735 ILCS 5/2-1117)

Pursuant to 735 ILCS 5/2-1117, any defendant, whose fault, as determined by the trier of fact, is less than 25% of the total fault attributable to the Plaintiff, Joel Habich, the defendants sued by the Plaintiff and any party that could have been sued by the Plaintiff, is only severally liable for economic and non-economic damages other than medical expenses and medically related expenses. Pleading in the alternative and without prejudice to its general denial as set forth above, if Aclara Meters is found to be liable in the instant case, which liability Aclara Meters specifically denies, and if Aclara Meters is found to be less than 25% of the total fault attributable to the Plaintiff, the defendants sued by the Plaintiffs and any party that could have been sued by the Plaintiff, then Aclara Meters will only be severally liable pursuant to 735 ILCS 5/2-1117 for that portion of economic and noneconomic damages, if any, that Aclara Meters' fault, if any, bears to the total amount of fault.

WHEREFORE, Defendant, ACLARA METERS, denies that Plaintiff is entitled to the relief sought or any relief whatsoever, and ACLARA METERS requests that Plaintiff's Complaint at Law be dismissed with prejudice, and with ACLARA METERS' costs awarded.

## THIRD AFFIRMATIVE DEFENSE – FAILURE TO MITIGATE DAMAGES

For its Third Affirmative Defense to the allegations in the Plaintiff's Complaint at Law, Plaintiff Joel Habich is not entitled to recover any damages sustained due to his failure to mitigate damages.

## FOURTH AFFIRMATIVE DEFENSE

This action cannot be maintained as a class action under any provision of 735 ILCS 5/2-801 or Federal Rule of Civil Procedure 23 because (a) Plaintiff is not an adequate class representative and/or class counsel cannot fairly and adequately protect the interests of the purported class; (b) Plaintiff's claims are not typical of the claims of asserted class members; (c) individual issues of law or fact predominate over any common questions; (d) a class action is not a superior method for the fair and efficient adjudication of the controversy; (e) none of the other requirements for maintaining this action as a class action have been satisfied; and (f) the asserted class is not properly defined or readily ascertainable. Further, any adjudication of Plaintiff's individual claims or those of other proposed class members will require individualized evidence as to Plaintiff and each putative class member. Further, any adjudication of Plaintiff's individual claims or those of the asserted class will require individualized inquiry on the questions of injury, causation, and damages, such that imposition of liability and any award of damages or other relief against Aclara Meters on the basis of generalized class-wide proof will not satisfy the requirements of 735 ILCS 5/2-801 or Rule 23.

WHEREFORE, Defendant ACLARA METERS denies that Plaintiff is entitled to the relief sought or any relief whatsoever, and ACLARA METERS requests that Plaintiff's Complaint at Law be dismissed with prejudice and with ACLARA METERS' costs awarded.

Dated: September 26, 2022

_s/ James W. Ozog_
James W. Ozog – 2130963
David J. O'Connell – 6199086
Goldberg Segalla LLP
222 West Adams Street, Suite 2250
Chicago, IL 60606
312.572.8400
312.572.8401 – fax
jozog@goldbergsegalla.com
doconnell@goldbergsegalla.com
_Counsel for Defendants Aclara Technologies,_
_LLC and Aclara Meters, LLC_

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned, as attorney, states the foregoing Pleading and this Certificate of Service was electronically filed through CM/ECF and served upon counsel of record listed below on this 26th day of September, 2022.

| *Counsel for Plaintiff* | *Counsel for Defendants Exelon Corporation and Commonwealth Edison Company* |
|---|---|
| Glen J. Dunn | Paul E. Kelly |
| Dennis H. Stefanowicz, Jr. | M. Kellett McConville |
| Glenn J. Dunn & Assocites | Kelly & King, P.C. |
| One East Wacker Drive, Suite 2510 | 19 South LaSalle Street, Suite 1000 |
| Chicago, IL 60601 | Chicago, IL 60603 |
| gdunn@gjdlaw.com | pek@kellykinglaw.com |
| | mkm@kellykinglaw.com |
| | |
| | Brian O. Watson |
| | Sarah E. Finch |
| | Riley Safer Holmes & Cancila LLP |
| | 70 West Madison Street, Suite 2900 |
| | Chicago, IL 60602 |
| | bwatson@rshc-law.com |
| | sfinch@rshc-law.com |

   s/  *James W. Ozog*