**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

JOEL HABICH, individually and on behalf of
a class of persons similarly situated,

                Plaintiffs,

    vs.

EXELON CORPORATION,
COMMONWEALTH EDISON COMPANY,
ACLARA TECHNOLOGIES, LLC, and
ACLARA METERS, LLC,

              Defendants.

No. 22 CV 4438

District Judge Franklin U. Valderrama

Magistrate Judge Heather K. McShain

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO STRIKE PLAINTIFF'S NATIONWIDE CLASS ALLEGATIONS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

LEGAL STANDARD........................................................................................................... 4

ARGUMENT ....................................................................................................................... 5

    I.    Habich Cannot Bring Nationwide Class Claims for Injuries He Does Not Share.......... 5

    II.    Habich Cannot Meet the Requirements of Rule 23(a)..................................................... 6

        A.    Habich's Nationwide Class Definitions Are Improper Fail-Safes......................... 6

        B.    Habich Is Neither Typical Nor Adequate for His Nationwide Classes. ................ 8

        C.    Habich's Nationwide Class Allegations Do Not Satisfy the Commonality Requirement.......................................................................................................... 11

        D.    Habich's Class Allegations Do Not Satisfy Numerosity. .................................... 13

    III.    Habich Cannot Maintain a Class Action Under Rule 23(b)(3)...................................... 13

    IV.    Habich Cannot Maintain a Class Action Under Rule 23(b)(2)...................................... 15

CONCLUSION.................................................................................................................... 15

## INTRODUCTION

This case is about a single fire allegedly involving an electrical smart meter that impacted one property, not a nationwide product liability class action. The purported class members—anyone who claims damage from any fire caused by electrical smart meters that have been installed and maintained by different electrical workers from different companies on different properties throughout the nation—raise highly individualized, fact-intensive claims subject to unique defenses. Plaintiff Joel Habich cannot conceivably meet the requirements of Rule 23 to pursue these class claims for negligence against Commonwealth Edison Company ("ComEd") and, its parent holding company, Exelon Corporation ("Exelon") and strict product liability against Aclara Technologies, LLC and Aclara Technologies, LLC ("Aclara").

Indeed, as the Seventh Circuit, this District, and their sister courts have held, nationwide product liability class claims cannot be maintained and should be stricken at the pleading stage. The Seventh Circuit has even been explicit that "products-liability suits may not proceed as nationwide classes." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002). As that court has explained repeatedly, product liability suits involve the application of multiple legal rules to myriad individual facts. Thus, they cannot satisfy Rule 23's requirements as a matter of law. *E.g.*, *id.*; *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1304 (7th Cir. 1995) (same); *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 745–46 (7th Cir. 2008) (same); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 674 (7th Cir. 2001) (same).

Habich's class allegations also fail as a matter of law because he lacks standing to bring his alleged class claims. Habich alleges injury in only one state, Illinois, from only one product, an Aclara I-210+c meter, installed by only one company, ComEd. He cannot pursue class claims for injuries that he does not share with absent class members in other jurisdictions for different meters installed by entirely different companies. He also cannot claim prospective injunctive

1

relief on behalf of the alleged classes because he is admittedly aware of the issues alleged here and therefore unlikely to be harmed in the future.

Nor can Habich possibly meet the requirements of numerosity, commonality, typicality, and adequacy. Habich offers this Court with no workable definition for his alleged nationwide classes. Instead, he asserts improper "fail-safe" class definitions where class membership depends on whether a person has a valid claim of causation. Habich also identifies no class-wide cause and companywide policies that have resulted in every fire across the nation such that his claims and the class claims share common questions and that his claims are typical of and provide adequate representation for the class claims. In fact, Habich alleges just the opposite: dozens of possible causes for fires allegedly involving electrical smart meters that have been installed and maintained by different electrical workers from different companies. That highly individualized, fact-intensive investigation makes class treatment impossible.

Finally, and equally important, Habich's allegations foreclose any possibility of satisfying Rule 23(b). Habich cannot establish predominance as required by Rule 23(b)(3), and he cannot sustain a Rule 23(b)(2) injunctive relief class because he lacks standing to pursue prospective injunctive relief for the alleged classes and his claims for monetary damages are far more than "incidental" to his requested injunctive relief.

For all these reasons, the Court should strike the nationwide class action allegations under Rules 23(c)(1)(A) and 23(d)(1)(D) and the clear Seventh Circuit precedent barring nationwide class treatment in product liability suits.

## BACKGROUND

In July 2020, Habich allegedly owned and operated a fast-food restaurant in Orland Park that was supplied with electrical service by ComEd. (Dkt. 33 ¶¶ 12–14.) That electrical service included an Aclara I-210+c electrical smart meter that ComEd allegedly installed in April 2018.

(*Id.* ¶ 14.) A fire damaged Habich's Orland Park restaurant on July 29, 2020. (*Id.* ¶¶ 16, 22.) Habich claims that the cause of the fire was the Aclara I-210+c electrical smart meter installed by ComEd. (*Id.* ¶¶ 18–19.)

Based on these allegations, Habich makes both individual and nationwide class claims. Habich alleges individual claims against ComEd and, its parent holding company,[1] Exelon for (1) negligent and willful and wanton selection, installation, and testing of the meter, as well as negligent and willful and wanton training and failure to warn (Count I), and (2) negligent infliction of emotional distress (Count II). (*Id.* ¶¶ 34–50.) Habich asserts individual claims for strict product liability related to the meter against Aclara (Counts III and IV). (*Id.* ¶¶ 51–60.)

Habich tacks on multiple nationwide class claims (Counts V–VII). (*Id.* ¶¶ 61–93.) As to ComEd and Exelon, Habich asserts a nationwide class claim for negligence on behalf of "[a]ll individuals who suffered from personal and/or property damage as a direct result of fire caused by arcing, or other combustion events originating from the Smart Meters installed and/or maintained by the Defendant, and their subsidiaries, affiliates, predecessors and/or successors, during the relevant statute of limitations." (*Id.* ¶ 64.) As to Aclara, Habich asserts nationwide class claims for strict product liability on behalf of "[a]ll individuals who suffered from personal and/or property damage as a direct result of fire, caused by arcing or other combustion events

---

[1] As Habich recognizes (Dkt. 33 ¶¶ 1–2), Exelon is an entirely separate holding company that conducts business through ComEd and its subsidiaries. Form 10-K, Exelon Corp., Dec. 31, 2021, *available at* sec.gov/edgar/browse/?CIK=1109357; *Linsner v. Exelon Corp.*, 2012 IL App (1st) 110753-U, ¶ 4 ("Exelon [Corporation] was formed as a holding company in the late 1990's and has no employees."); *Carpenter v. Exelon Corp.*, No. 14-07-00149-CV, 2007 WL 3071998, at *3 (Tex. App. Oct. 23, 2007) ("Exelon is a holding company with no employees or business operations of any type."); *see also Tobey v. Chibucos*, 890 F.3d 634, 647–48 (7th Cir. 2018) (courts may consider documents referenced in the complaint and may take judicial notice of public records not subject to reasonable dispute). As an entirely separate holding company, Exelon is not liable for the acts of its subsidiaries. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *Papa v. Katy Indus., Inc.*, 166 F.3d 937, 940-41 (7th Cir. 1999).

originating from the Smart Meters caused by the Defendant's manufacturing defect, and their subsidiaries, affiliates, predecessors and/or successors, or at any time during the relevant statute of limitations."  (*Id.* ¶¶ 77, 87.)

## LEGAL STANDARD

"[W]here the pleadings make clear" that a suit cannot satisfy Rule 23, it is appropriate to "strike class allegations to conserve court and party resources."  *Jones v. BRG Sports, Inc.*, No. 18 CV 7250, 2019 WL 3554374, at *4 (N.D. Ill. Aug. 1, 2019); *accord Vann v. Dolly, Inc.*, No. 18 CV 4455, 2020 WL 902831, at *5 (N.D. Ill. Feb. 25, 2020) (striking class allegations); *Stanek v. Saint Charles Cmty. Unit Sch. Dist. No. 303*, No. 13-CV-3106, 2017 WL 5971985, at *6–8 (N.D. Ill. Dec. 1, 2017) (same); *Lee v. The Child. Place Retail Stores, Inc.*, No. 14 CV 3258, 2014 WL 5100608, at *1 (N.D. Ill. Oct. 8, 2014) (same); *Wright v. Family Dollar, Inc.*, No. 10 CV 4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010) (same).

To satisfy Rule 23, plaintiffs must both plead and prove that their proposed classes meet Rule 23(a)'s requirements—numerosity, commonality, typicality and adequacy—and at least one subsection of Rule 23(b).  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).  Implicit in these requirements is that the proposed classes also must be properly defined. *See Steimel v. Wernert*, 823 F.3d 902, 917–18 (7th Cir. 2016).

Rule 23(c)(1)(A) requires that the district court "must determine by order whether to certify the action as a class action" at "an early practicable time."  The court "may deny class certification even before the plaintiff files a motion requesting certification" and "need not delay ... if it thinks that additional discovery would not be useful in resolving the class determination."  *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011).  In particular, "a legal challenge to class certification … may be appropriate on the pleadings."  *Kubilius v. Barilla Am., Inc.*, No. 18 C 6656, 2019 WL 2861886, at *2 (N.D. Ill. July 2, 2019).

4

## ARGUMENT

### I.  Habich Cannot Bring Nationwide Class Claims for Injuries He Does Not Share.

As a matter of law, Habich's nationwide class allegations should be stricken because he cannot sue on claims for injuries that he does not share.  In striking class allegations, this Court has held that "'a person cannot predicate standing on injury which he does not share.  Standing cannot be acquired through the back door of a class action.'"  *Willard v. Tropicana Mfg. Co.*, 577 F. Supp. 3d 814, 824 (N.D. Ill. 2021) (Valderrama, J.) (quoting *Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002)); *id.* at 824–25 (citing *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 936 (7th Cir. 2021)).  And as the Supreme Court and Seventh Circuit have explained, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for *each claim* that they press and for *each form of relief* that they seek." *Albert v. Oshkosh Corp.*, 47 F.4th 570, 577 (7th Cir. 2022) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (emphasis added)); *accord Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (plaintiffs must "'possess the same interest and suffer the same injury'" (citation omitted)).

Here, Habich lacks standing to maintain his class claims for three fundamental reasons:

- **Other States.**  Habich claims injury in only one state, Illinois, and therefore cannot maintain common law class claims outside of Illinois.  *See, e.g.*, *Brown v. Auto-Owners Ins. Co.*, No. 1:21-CV-02597, 2022 WL 2442548, at *2–3 (N.D. Ill. June 1, 2022) ("Courts in this District routinely dismiss or strike class claims where named plaintiffs seek to represent proposed class members from other states."); *Smith-Brown v. Ulta Beauty, Inc.*, No. 18 C 610, 2019 WL 932022, at *6 (N.D. Ill. Feb. 26, 2019); *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 731–35 (N.D. Ill. 2015); *In re Dairy Farmers of Am.*, No. 09 CV 3690, 2013 WL 4506000, at *6 (N.D. Ill. Aug. 23, 2013).

- **Other Products.**  Habich alleges injury from only one product, an Aclara I-210+c electrical smart meter, installed by ComEd, and thus cannot pursue class claims for other electrical smart meters installed by other companies.  *Weaver*, 3 F.4th at 936 (plaintiffs lack standing to assert claims over other products); *Willard*, 577 F. Supp. 3d at 824–25 (same).

- **Injunctive Relief.**  Habich is admittedly aware of the issues alleged here (as shown by his complaint), is unlikely to be harmed by Defendants' alleged conduct again, and

thus cannot pursue class claims for prospective injunctive relief. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740–41 (7th Cir. 2014) ("Since [plaintiff] is now aware of [defendant's] sales practices, he is not likely to be harmed by the practices in the future."); *Bakopoulos v. Mars Petcare US, Inc.*, No. 20 CV 6841, 2021 WL 2915215, at *3 (N.D. Ill. July 12, 2021) ("[Plaintiff] is aware of the true nature of [defendant's] products and their marketing (as shown by the complaint) and he is therefore unlikely to be harmed by the defendant's practices in the future.").

Moreover, as both the Seventh Circuit and this Court have held, these improper claims should be stricken at the beginning of the litigation because they are threshold, "antecedent legal issue[s]." *See Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008); *Willard*, 577 F. Supp. 3d at 824 ("At this stage of the case, there is no class and plaintiffs cannot bypass the 'irreducible constitutional minimum' of Article III standing for their individual claims." (citations omitted)). No discovery can, or will, change the legal issue apparent from Habich's complaint: he cannot sue on claims for injuries which he does not have. And "no proffered or potential factual development offers any hope of altering that conclusion." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (affirming order striking class allegations). Thus, Habich's nationwide class claims should be stricken as a matter of law.

## II.     Habich Cannot Meet the Requirements of Rule 23(a).

### A.     Habich's Nationwide Class Definitions Are Improper Fail-Safes.

Habich's nationwide class allegations also should be stricken because his class definitions are improper "fail-safes." A fail-safe class is one "defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 825 (7th Cir. 2012). The problem with fail-safe classes is that "a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.* (citing *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) (fail-safe class definition was one of two grounds for decertifying class)); *see*

6

*also Bolden v. Walsh Const. Co.*, 688 F.3d 893, 895 (7th Cir. 2012) (criticizing class definitions that "us[e] a future decision on the merits to specify the scope of the class").

Habich alleges improper fail-safe classes because his definitions include only individuals whose damage was "caused" by an allegedly defective or improperly installed or maintained electrical smart meter. (Dkt. 33 ¶¶ 64, 77, 87.) In other words, class membership would depend on whether a person has a valid claim of causation. (*Id.*) That is a textbook fail-safe definition. *See Messner*, 669 F.3d at 825 (citing *Randleman*, 646 F.3d at 352). In fact, just like Habich's improper definitions, other similar smart meter class claims have failed for this exact reason. In *Cortes v. Honeywell Bldg. Solutions Ses Corp.*, No. 14-20429-CIV, 2014 WL 11958626 (S.D. Fla. Sept. 24, 2014), another electrical smart meter case, the court held that the class definition was an improper fail-safe because it required a finding of causation to determine class membership. *Id.* at *4. That fail-safe definition was especially flawed because, as here, there are "numerous other potential causes of meter [] damage wholly unrelated to the Smart Meter installation," and each potential class member must show the damage each sustained was caused by a smart meter, and "not the result of other causes, such as poor wiring in the home." *Id.*

Just as in *Cortes*, Habich's class definitions improperly require a finding of causation for class membership. (Dkt. 33 ¶¶ 64, 77, 87.) And just as in *Cortes*, Habich's allegations reinforce the obvious fact that there are many causes of fires, including intentional human conduct, unintentional human conduct, failures of equipment or heat sources, acts of nature, and undetermined causes. (*See* Dkt. 33 ¶ 17 (citing agency investigations); Orland Fire Protection District Report 5, at E1, attached as Ex. 1.) In Habich's case specifically, possible causes include arson, employees, trespassers, smoking, an extension cord, HVAC systems, electrical systems, appliances or devices, or electrical service connected to the building structure. (*See*

Dkt. 33 ¶¶ 14, 15, 17; Office of Illinois State Fire Marshal 7–10, attached as Ex. 2.)  Worse still, Habich claims dozens of possible causes for other fires allegedly involving other electrical smart meters—and no single class-wide cause or companywide conduct—ranging from "potential points of loose connections," "potential issues that should have been identified as an overheating or fire-hazard" to "potential issues that should have been identified as an overheating or fire-hazard," "inadequate training and information to the users," "improper[] manufacture[] and/or assembl[y]," and so on. (Dkt. 33 ¶¶ 33, 40(a)-(f), 54(a)-(o).)

Because this Court would have to answer each of these causation questions as to each individual fire just to determine whether that individual is a class member, Habich's proposed class definitions are improper fail-safes. (Dkt. 33 ¶¶ 64, 77, 87.)  And not only do those improper fail-safe definitions depend on whether the person has a valid claim of causation, they also shield potential class members from receiving an adverse judgment, depriving the Defendants of any binding judgment even after prevailing on the allegations.  *Day*, 335 F.R.D. at 200-01; *Cortes*, 2014 WL 11958626, at *4–5.  Therefore, the Court should strike Habich's class allegations.

### B.  Habich Is Neither Typical Nor Adequate for His Nationwide Classes.

Habich's nationwide class allegations separately fail because Rule 23(a) requires that his claims and defenses must be "typical of the claims or defenses of the class," and that he will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(3), (4).  As a practical matter, the typicality and adequacy requirements often merge.  *Dukes*, 564 U.S. at 349 n.5.  A claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... the claims are based on the same legal theory[.]"  *Korsmo v. Am. Honda Motor Co*., No. 11 C 1176, 2012 WL 1655969, at *6 (N.D. Ill. May 10, 2012).  Class treatment is inappropriate where a putative class representative's claim "is subject to ... unique defenses" that threaten to become the focus of the litigation.  *Id.*

It is apparent from the pleadings that Habich is neither typical nor adequate. As explained above, Habich does not share the same claims for relief, possess the same interest, or allege the same injury as his proposed nationwide class members. *See supra* § I at 5-6; *Cortes*, 2014 WL 11958626, at *7 (no adequacy because plaintiffs are not "even in the class they seek to represent"). Habich also alleges no companywide practices and no class-wide cause against ComEd, Exelon, and Aclara such that his claims are typical. *Dukes*, 564 U.S. at 353. To the contrary, Habich's claims implicate different types of smart electrical meters that have been installed and maintained by different electrical workers at different companies, including all of their "subsidiaries, affiliates, predecessors and/or successors," allegedly causing any kinds of "personal and/or property damage." (Dkt. 33 ¶¶ 2, 40(a)-(f), 54(a)-(o), 64, 77, 87.)

Moreover, the electrical services to Habich's restaurant "included the utilization of customer-owned electrical equipment" (Dkt. 42 ¶ 14), raising whether Habich was contributorily negligent for (1) failing to maintain the premises where the fire occurred, (2) failing to properly maintain the customer-owned equipment and wiring at the premises, and (3) placing combustible materials and allowing combustible materials to be located adjacent to the electrical and gas meters for the premises. (Dkt. 41 at 27-28; Dkt. 42 at 29-30.) These facts will cause "plaintiffs' energies [to] end up being directed toward presenting and defending their individual claims at the expense of the class." *Allen v. City of Chi.*, 828 F. Supp. 543, 553–54 (N.D. Ill. 1983) (citations omitted); *Cortes*, 2014 WL 11958626, at *7 (no adequacy because plaintiffs "have legal and factual issues unique to them that will distract them from representing the class").

Habich's nationwide class allegations create even more problems from a Rule 23(a) standpoint because he seeks to represent class members across all 50 states and the District of Columbia, meaning each individual's claims would be governed by materially different law.

The Seventh Circuit has repeatedly rejected such class claims because "uniform law [is] essential to class certification" and "[n]o class action is proper unless all litigants are governed by the same legal rules." *In re Bridgestone/Firestone*, 288 F.3d at 1015; *In re Rhone-Poulenc*, 51 F.3d at 1304 ("[T]he states of the United States sing negligence with a different pitch"). Courts in this District thus routinely strike nationwide class allegations like those Habich alleges. *See, e.g.*, *Kubilius*, 2019 WL 2861886, at *2 (striking nationwide class allegations because "[t]he Seventh Circuit has made clear that [nationwide class actions based on state law] are disfavored"); *In re Yasmin*, 275 F.R.D. 270, 275 (S.D. Ill. 2011) ("[T]he law of this Circuit clearly provides that the Court cannot ignore differences in state law in order to facilitate class treatment.").

While there is no need to look behind this wall of circuit precedent, a sampling of the legal standards across states for the claims, defenses, and issues here confirms that pronounced differences exist between the potentially applicable laws:

- **Statutes Preempting Common Law.** Several states, like Connecticut, Louisiana, New Jersey, and Washington, have product liability statutes that preempt the claims alleged here. *See, e.g.*, *In re Yasmin & Yaz Litig.*, 2011 WL 3796903, at *2 (S.D. Ill. Aug. 25, 2011); *True v. ConAgra Foods*, 2011 WL 176037, at *8 (W.D. Mo. Jan. 4, 2011). In states that still have common law torts, there are also "differing presumptions and burdens of proof." *True*, 2011 WL 176037, at *8; *Rhone-Poulenc Rorer*, 51 F.3d at 1300 (discussing variations in "duty of care, foreseeability, and proximate cause").

- **Strict Liability.** "[S]ome jurisdictions," like Virginia and Delaware, "do not even recognize strict liability." *DuRocher*, 2015 WL 1505675, at *11; *True*, 2011 WL 176037, at *8; *Castano*, 84 F.3d at 743 n.15. "Some have adopted Restatement (Second) of Torts § 402A," though even among those, "[t]here are variations." *Castano*, 84 F.3d at 743 n.15.

- **Affirmative Defenses.** Comparative negligence and assumption of risk are "a complete defense to a product claim in some states." *Castano*, 84 F.3d at 743 n.15. "In others, it is a part of comparative fault analysis." *Id.* "Some states utilize 'pure' comparative fault; others follow a 'greater fault bar'; and still others use an 'equal fault bar.'" *Id.* (citations omitted).

- **Economic Loss Doctrine.** The economic loss doctrine is central to Habich's damages theory, and in jurisdictions that have adopted the doctrine, plaintiffs generally cannot

10

"recover in tort." *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 431 (S.D.N.Y. 2017) (quote marks omitted). But "[n]ot all states have adopted the economic loss rule, and those that have vary widely in their understanding of the doctrine's scope." *Bank North, N.A. v. B.J.'s Wholesale Club, Inc.*, 394 F. Supp. 2d 283, 287 (D. Me. 2005); *accord Teggerdine v. Speedway, LLC*, 2018 WL 2451248, at *7 (M.D. Fla. May 31, 2018) (denying class certification given variances in "the law of negligence among the various states," including "the economic loss rule").

- **Statutes of Limitations.** The 50 states have different limitations periods and accrual rules for the claims raised here. *Camey v. Force Factor, LLC*, 2016 WL 10998440, at *7 (D. Mass. May 16, 2016); *Ronat*, 2008 WL 4963214, at *4.

Each of these critical issues must be decided for each class member based on his or her particular facts and the applicable law—making Habich's representation neither typical nor adequate of his nationwide class allegations. Habich's claims are therefore the antithesis of the type suitable for class treatment and his class allegations should be stricken.

### C. Habich's Nationwide Class Allegations Do Not Satisfy the Commonality Requirement.

While the reasons above are sufficient in themselves to strike Habich's class allegations, the claims also fail to present "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This "commonality" requirement means that the claims of all members of the proposed class "must depend upon a common contention ... that is capable of class wide resolution— which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. *Dukes* made clear that "[w]hat matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quotation omitted; emphasis original).

Here, again, Seventh Circuit precedent forecloses Habich's nationwide product liability class claims: "No class action is proper unless all litigants are governed by the same legal rules. Otherwise, the class cannot satisfy the commonality and superiority requirements of Fed. R. Civ.

11

P. 23(a), (b)(3)." *In re Bridgestone/Firestone*, 288 F.3d at 1015; *Thorogood*, 547 F.3d at 745–46 (same); *Szabo*, 249 F.3d 672, 674 ("Differences [in state tort law] of this kind cut strongly against nationwide classes, as we held in *Rhone-Poulenc Rorer ...* , destroying the commonality of the claims." (citing *In re Rhone-Poulenc*, 51 F.3d at 1304)).

Habich also identifies no question common to all proposed members class that will resolve that issue against all Defendants for all class members "in one stroke." *Dukes*, 564 U.S. at 350. Rather, Habich alleges questions unique to ComEd, Exelon, and Aclara that cannot "generate common answers apt to drive the resolution of the litigation." *Id.* As to ComEd and Exelon, Habich identifies fact-specific questions of whether staff: (1) were properly trained to look out for preexisting issues with connectivity; (2) properly installed and replaced the old meters with new meters; (3) properly exercised reasonable degree of care and attempted to rectify any alleged defects; and (4) properly installed any allegedly defective smart meters. (Dkt. 33 ¶ 65.) As to Aclara, Habich identifies whether Aclara: (1) knew materials from the smart meters would cause a fire; (2) used cheaper and more flammable materials; and (3) ever recalled, repaired, or rectified the alleged defects. (*Id.* ¶¶ 78, 88.) None of these questions involves any alleged companywide conduct and practice—let alone the same cause and same injuries from the same company—to satisfy the commonality requirement. *Dukes*, 564 U.S. at 350-53.

Answering Habich's alleged questions will never resolve the central issue in this case: whether any of the class members' damages were *caused* by ComEd, Exelon, and Aclara. In fact, the answers to Habich's questions will all depend on the highly individualized facts of each meter, installation, and fire, and the answers for one putative class member will not help to answer them for another. A putative class of individuals with different meters and installations by different electrical workers at different companies across the entire nation, experiencing

different types of personal and property damages, leaves a wide commonality gap that Habich's allegations cannot overcome. Causation is the critical common question. But it is an inherently individualized inquiry that cannot be answered on a class-wide and companywide basis. Accordingly, because Habich identifies no common question that will drive the resolution of this litigation against all Defendants on a class-wide and companywide basis "in one stroke," the class allegations should be stricken. *Dukes*, 564 U.S. at 350; *Cortes*, 2014 WL 11958626, at *7.

### D. Habich's Class Allegations Do Not Satisfy Numerosity.

As a final nail in the Rule 23(a) coffin, Habich's class allegations also fall far short of the requirement that a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). Although there is no "magic number," classes of more than 40 generally are considered sufficiently numerous. *See Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859–60 (7th Cir. 2017) (affirming denial of 29 members). At the pleading stage, Habich must allege facts to show numerosity as to each of his proposed classes. *Perrusquia v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, No. 88 CV 0871, 1989 WL 121208, at *6 (N.D. Ill. Sept. 28, 1989) (striking class claims).

Habich tries to satisfy numerosity with his nationwide allegations. (Dkt. 33 ¶¶ 64, 77, 87.) But again, Habich cannot maintain nationwide class claims. *See supra* at §§ I–II. Because Habich alleges no facts—because he cannot under Federal Rule of Civil Procedure 11—that anywhere near 40 people in Illinois have sustained personal or property damage from an Aclara I-210+c electrical smart meter installed by ComEd, Habich's class allegations should be stricken.

## III. Habich Cannot Maintain a Class Action Under Rule 23(b)(3).

Habich's class allegations also fail to satisfy any subsection of Rule 23(b). As to Rule 23(b)(3), Habich identifies no common questions that "predominate over any questions affecting

only individual members[.]" Fed. R. Civ. P. 23(b)(3). Indeed, courts routinely reject product liability class actions for class treatment under Rule 23(b)(3) because in a product liability case:

> no single happening or accident occurs to cause similar types of physical harm or property damage. No one set of operative facts establishes liability. No single proximate cause applies equally to each potential class member and each defendant. Furthermore, the alleged tortfeasor's affirmative defenses (such as failure to follow directions, assumption of the risk, contributory negligence, and the statute of limitations) may depend on facts peculiar to each plaintiff's case.

*Bethards v. Bard Access Sys., Inc.*, No. 94 C 1522, 1995 WL 75356, at *3 (N.D. Ill. Feb. 22, 1995) (internal quotations omitted); *In re Bridgestone/Firestone*, 288 F.3d at 1015 (product liability differences "preclude any finding" of Rule 23(b)(3) predominance and superiority).[2]

Habich's allegations raise the same individualized fact questions to determine whether ComEd, Exelon, and Aclara are liable to any potential class member. As in *Cortes*, establishing each claim will require inquiries as to each potential class members' fire; electrical smart meter; installation and maintenance for the meter; other potential causes; the type and amount of alleged damages; and many other case-by-case inquiries. 2014 WL 11958626, at *8 ("proximate cause determinations would predominate over the determination of the common issue of Defendants' conduct, due to the numerous potential causes"); *Jones*, 2019 WL 3554374, at *6 ("thorny individualized issues pervade the plaintiffs' products liability claims").

As a result, Habich cannot satisfy the predominance requirement of Rule 23(b)(3), and the class allegations should therefore be stricken.

---

[2] Habich similarly cannot establish Rule 23(b)(3) superiority, which requires that a class action is "superior to other available methods for fairly and efficiently adjudicating" the claims because a class trial would be impossible here given the fact specific, highly individualized proof, as is plainly evident from the facts in Habich's own claims. *See also* Rule 23 Advisory Comm. Notes 2003 ("A critical need is to determine how the case will be tried. An increasing number of courts require a party requesting class certification to present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible to class-wide proof.").

## IV. Habich Cannot Maintain a Class Action Under Rule 23(b)(2).

Finally, Habich's complaint makes clear that he cannot maintain this case under Rule 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class ... [not] when each individual class member would be entitled to a *different* injunction or declaratory judgment." *Dukes*, 564 U.S. at 360 (emphasis original). Habich identifies no single injunction that would provide relief to him and each alleged class member. Instead, Habich demands prospective relief that Defendants "cease and desist from any and all further installations" and "cease and desist from any and all further manufacturing." (Dkt. 33 ¶¶ 73(d), 83(d), 93(d).) But Habich cannot obtain this relief because he is admittedly aware of the issues alleged here and therefore unlikely to be harmed in the future. *See supra* § I at 5; *Camasta*, 761 F.3d at 740–41; *Bakopoulos*, 2021 WL 2915215, at *3.

Class treatment is also impermissible under Rule 23(b)(2) when, as here, the complaint seeks monetary damages that are more than "incidental" to the requested injunctive or declaratory relief. *See Dukes*, 564 U.S. at 360; *Lemon v. Int'l Union of Operating Eng.*, 216 F.3d 577, 580–81 (7th Cir. 2000) (same). Habich's case presents exactly that circumstance: his plea for damages squarely asserts that it is "in excess of the minimum jurisdictional limits," and he seeks compensatory damages from the fire. (Dkt. 33 at 14 and ¶ 73(e).) Habich's requested monetary relief is therefore fatal to class treatment under Rule 23(b)(2).

## CONCLUSION

For these reasons, Defendants request that the Court grant their motion and strike Habich's nationwide class allegations.

Dated: December 9, 2022        Respectfully submitted,

*/s/ Brian O. Watson*

Brian O. Watson
Sarah E. Finch
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Ste. 2900
Chicago, Illinois 60602
(312) 471-8700 – Phone
(312) 471-8701 – Fax
bwatson@rshc-law.com
sfinch@rshc-law.com

Paul Kelly
Kellett McConville
KELLY & KING, P.C.
19 S. LaSalle St., Suite 1000
Chicago, Illinois 60603
312-553-5290 – Phone
312-553-5291 – Fax
pek@kellykinglaw.com
mkm@kellykinglaw.com

*Counsel for Defendants Exelon Corporation
and Commonwealth Edison Company*

Dated: December 9, 2022

Respectfully submitted,

*/s/ James W. Ozog*

James W. Ozog, #2130963
David J. O'Connell, #6199086
GOLDBERG SEGALLA LLP
222 West Adams Street, Suite 2250
Chicago, IL 60606
312.572.8400
312.572.8401 – fax
jozog@goldbergsegalla.com
doconnell@goldbergsegalla.com

*Counsel for Defendants Aclara Technologies,*
*LLC and Aclara Meters, LLC*

17