**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOEL HABICH, individually and on behalf of a class of persons similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>EXELON CORPORATION, COMMONWEALTH EDISON COMPANY, ACLARA TECHNOLOGIES, LCC, and ACLARA METERS, LLC,<br><br>        Defendants. | No. 22-cv-04438<br>Judge Franklin U. Valderrama |

## ORDER

Plaintiff Joel Habich's (Habich) fast food-restaurant was destroyed by a fire allegedly caused by a smart meter. Commonwealth Edison Company (ComEd) supplied electrical service to the restaurant, which included an Aclara I-210+c electric smart meter installed by ComEd and distributed and manufactured by Aclara Technologies, LLC (Aclara Tech) and Aclara Meters, LLC (Aclara Meters). Habich sued Exelon Corporation (Exelon), ComEd's parent company; ComEd; Aclara Tech; and Aclara Meters (collectively, Defendants), on behalf of himself and a nationwide putative class asserting various common law tort claims. R. 33,[1] First Amended

---

[1]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

Complaint (FAC). Defendants move to strike Habich's nationwide class allegations, R. 48, and for the following reasons, the motion is granted.

## Background[2]

Exelon owns ComEd, an electric utility company that delivers power to over 3.8 million homes across Illinois. FAC ¶ 3. Aclara Tech supplies smart infrastructure to utility companies, including ComEd, and manufactures electric smart meters, including the one supplied to Habich. *Id.* ¶ 5. Aclara Meters, a subsidiary of Aclara Tech, likewise supplies smart infrastructure, and manufactures and supplies electric smart meters, including the one supplied to Habich. *Id.* ¶ 7. Exelon, according to Habich, directed its subsidiaries, including ComEd, to replace analog meters with Aclara smart meters. *Id.* ¶ 24.

Habich owned a building and commercial business, Don's Hot Dogs III, that was destroyed by a fire, while deriving electric supply from ComEd. FAC ¶¶ 10, 12, 16. ComEd had installed an Aclara I-210+c electric smart meter on the property and maintained the electrical service to the building. *Id.* ¶¶ 10, 13–14. Multiple agencies later determined that the fire began in the south exterior wall of the building where the smart meter and supply conduit were affixed. *Id.* ¶¶ 15, 17–19.

Habich sued Defendants in the Circuit Court of Cook County, Illinois. Defendants removed the case to this Court on the basis of diversity jurisdiction. R. 1 at 3–4. Habich subsequently filed the FAC asserting: (1) individual claims for

---

[2]The Court accepts as true all of the well-pleaded facts in the FAC, and draws all reasonable inferences in favor of Habich. *Jones v. BRG Sports, Inc.*, 2019 WL 3554374, at *4 (N.D. Ill. Aug. 1, 2019).

negligence (Count I) and negligent infliction of emotional distress (Count II) against Exelon and ComEd, and for strict product liability against Aclara Tech (Count III) and Aclara Meters (Count IV), and (2) class claims for negligence against Exelon and ComEd (Count V), for strict product liability against Aclara Tech (Count VI), and for strict product liability against Aclara Meters (Count VII).

For his class claims based on negligence, Habich seeks to represent a class of similarly situated persons defined as:

> All individuals who suffered from personal and/or property damage as a direct result of fire caused by arcing, or other combustion events originating from the Smart Meters installed and/or maintained by the Defendant, and their subsidiaries, affiliates, predecessors and/or successors, during the relevant statute of limitations.

FAC ¶ 64.

For his class claims based on product liability, Habich seeks to represent a class of similarly situated persons defined as:

> All individuals who suffered from personal and/or property damage as a direct result of fire, caused by arcing or other combustion events originating from the Smart Meters caused by the Defendant's manufacturing defect, and their subsidiaries, affiliates, predecessor and/or successors, or at any time during the relevant statute of limitations.

FAC ¶ 77.[3] Habich estimates that there are over one hundred putative members of each class, who can be ascertained only by using the service and client lists maintained by Defendants. *Id.* ¶¶ 73, 83, 93.

---

[3]The only difference between the two proposed classes in Count VI (product liability against Aclara Tech) and Count VII (product liability against Aclara Meters) is that the language in Count VII uses the words "*because of* the Defendant's manufacturing defect" rather than "*caused by* the Defendant's manufacturing defect." *See* FAC ¶¶ 77, 87 (emphases added).

3

Defendants' fully briefed motion to strike Habich's nationwide class allegations is now before the Court.

**Legal Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "However, '[c]ourts in this District . . . evaluate motions to strike class allegations under Rule 23, not Rule 12(f).'" *Vann v. Dolly, Inc.*, 2020 WL 902831, at *2 (N.D. Ill. Feb. 25, 2020). Rule 23 states that a federal district court should rule at "an early practicable time after a person sues or is sued as a class representative . . . whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). "Consistent with this language, a court may deny class certification even before the plaintiff files a motion requesting certification." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011).

In the absence of Seventh Circuit authority, courts in the Northern District of Illinois have taken a variety of approaches in resolving motions to strike class allegations.

> Some courts have deemed a motion to strike an appropriate device to accomplish this task of assessing the viability of a class action where a complaint is so facially lacking that no amount of discovery or time could provide support for class status for the claims pleaded. Others have rejected use of the motion to strike for this purpose, concluding that a class determination decision generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action and, as a result, that a decision denying class status by striking class allegations at the pleading stage is inappropriate. Still other courts have taken a middle path, considering a motion to strike on its merits but abiding by the Seventh Circuit's admonition that such motions are generally disfavored. This approach is grounded in the reality that although plaintiffs generally have the burden of

4

demonstrating that they meet the requirements of Rule 23, it is typically class action defendants who control the information plaintiffs need to meet that burden.

*Jones v. BRG Sports, Inc.*, 2019 WL 3554374, at *3 (N.D. Ill. Aug. 1, 2019) (cleaned up)[4] (noting that the Seventh Circuit has not addressed the issue).

This Court adopts the approach of considering the motion to strike on its merits, "bearing in mind that the plaintiffs have not yet been allowed to conduct any discovery." *Jones*, 2019 WL 3554374 at *3 (agreeing with certain other district courts that "the motion to strike analysis should—at least where the motion is filed at this early a stage of the litigation—be limited to the face of the pleadings and documents incorporated by inclusion or reference, as would be appropriate for an analogous motion to dismiss under Rule 12(b)(6)"). The Court is persuaded that a complaint may be facially insufficient to support class certification, and so a motion to strike should not be denied as a matter of course, despite that the decision whether to certify the class will typically be postponed until after discovery has occurred for the reasons already stated. In sum, the Court will grant Defendants' motion to strike "only if it concludes that this is an exceptional case where it is clear from the complaint that circumstances warrant a motion to strike class allegations to conserve court and party resources and where the pleadings make clear that the suit cannot satisfy Rule 23." *Id.* at *4 (cleaned up); *Vann*, 2020 WL 902831 at *2 ("If the class allegations in the complaint are facially and inherently deficient . . . a motion to strike class

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

5

allegations can be an appropriate device to determine whether the case will proceed as a class action.") (cleaned up). It is within this framework that the Court analyzes the motion to strike.

## Analysis

Defendants advance four arguments in support of their motion to strike. First, the Seventh Circuit prohibits nationwide class actions. Second, Habich lacks standing because he cannot sue on claims that he does not share. Third, Habich presents impermissible fail-safe classes. Last, Habich fails to satisfy Rule 23's requirements. Since the Defendants have challenged Habich's standing, and thereby, the Court's subject-matter jurisdiction, the Court begins with Defendants' standing argument.

### I.   Standing

Though Defendants do not explicitly reference Rule 12(b)(1), they argue that Habich lacks standing to maintain his nationwide class allegations. Memo Strike at 5. The Court construes this portion of Defendants' motion to be a motion to dismiss for lack of subject matter jurisdiction. *See Avery v. City of Milwaukee*, 847 F.3d 433, 438 (7th Cir. 2017) ("[T]he caption on a motion is not essential.") (cleaned up).

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Standing is an "essential component of Article III's case-or-controversy requirement," and the plaintiff "bears the burden of establishing standing . . . in the same way as any other matter on which the plaintiff bears the burden of proof . . . ." *Apex Digit., Inc. v. Sears Roebuck & Co.*, 572 F.3d 440, 443 (7th

6

Cir. 2009). In order to survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's *allegations* as to jurisdiction are inadequate—"the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citing *Apex Digit.*, 572 F.3d at 443–44).

Article III standing is a matter of subject matter jurisdiction, consisting of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). The complaint "need only plausibly suggest each element of standing." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (cleaned up).

Defendants challenge Habich's standing in three respects. First, since Habich claims injury in only one state, Illinois, he cannot maintain a common law class outside of Illinois (citing, among other cases, *Brown v. Auto-Owners Ins. Co.*, 2022 WL 2442548, at *2 (N.D. Ill. June 1, 2022) (noting that courts "in this District routinely dismiss or strike class claims where named plaintiffs seek to represent proposed class members from other states")). Second, Habich alleges injury from only one product, an Aclara I-210+c meter installed by ComEd. Therefore, reason

Defendants, Habich cannot pursue class claims on behalf of those injured by different meters installed by entirely different companies. R. 49, Memo. Strike at 1, 5 (citing, among other cases, *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927 (7th Cir. 2021); *Willard v. Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814, 824 (N.D. Ill. 2021) ("[A] person cannot predicate standing on injury which he does not share)). Last, Habich lacks standing to pursue a claim for injunctive relief since he is aware of the issues regarding the smart meter and is unlikely to be harmed by the Defendants' conduct again. The Court addresses each argument in turn.

### A. Claims outside Illinois

Defendants' first standing challenge is that Habich, as a citizen of Illinois, has not suffered an injury in any state other than Illinois and therefore cannot bring a common law class claim outside of Illinois.

Habich, as Defendants point out, did not address this or any other standing argument in his response and therefore, waived any response. R. 61, Reply at 5. Courts in this district have taken different approaches to resolving the issue raised by Defendants. "Some view the issue as one of standing to be addressed at the pleading stage, and others view it as one of plaintiff's ability under Rule 23 to represent multi-state class, to be addressed in the context of a class certification motion." *Benson v. Newell Brands, Inc.*, 2020 WL 1863296, at *4 (N.D. Ill. April 14, 2020) (citing, among other cases, *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 757-59 (N.D. Ill. 2019) (collecting cases); *In re Herbal Supplements Mktg. & Sales Practices Litig.,* 2017 WL 2215025, at *6–7 (N.D. May 19, 2017)). The

8

Court agrees with the latter approach and concludes that this type of challenge really goes to the adequacy of the named plaintiff to represent the putative class members, not to Article III standing, and is best addressed at the class certification stage. *See Porter v. NBTY, Inc.*, 2016 WL 6948379, at *4 (N.D. Ill. Nov. 28, 2016) ("Plaintiffs may not be able to pursue claims under the laws of states in which they do not reside and did not purchase defendants' products, but the presence of these claims does not offend Article III. The parties agree that plaintiffs have Article III standing to bring their individual claims—their claimed injury is traceable to defendants and redressable.") (citing *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011)); *see also Payton v. Cnty. of Kane*, 308 F.3d 673, 680 (7th Cir. 2002*)*; *Ortiz v. Fireboard Corp*, 527 U.S. 815, 827 (1999).

So, when viewed through the Rule 23 lens, while a nationwide class may be impracticable here, the Court finds that "the prudent approach is to wait for a more fully developed record before deciding that issue." *Flaherty v. Clinique Labs, LLC*, 2021 WL 5299773, at *20 (N.D. Ill. Nov. 15, 2021) (collecting cases). As a court in this District recently stated, "[c]ourts generally have struck class allegations only (1) when the Defendant has conducted in-depth analysis of the many ways in which the laws of the states that comprise the proposed classes conflict, or (2) after choice of law issues had already been determined." *Joseph v. TGI Friday's, Inc.*, 2022 WL 17251277, at *9 (N.D. Ill. Nov. 28, 2022) (cleaned up). Defendants have satisfied neither condition here. Therefore, like the court in *Joseph*, "the Court needs additional factual development to determine whether any of the alleged differences

9

in state law create a conflict for [Habich] and potential class members or whether the class device may be manageable and otherwise appropriate to adjudicate one or more nonnationwide classes or subclasses." *Id.* Additionally, as Habich points out in response, R. 60, Resp. at 5, he alleges injuries stemming from installation of smart meters in six states, not across the entire country. *See Flaherty*, 2021 WL 5299773, at *7 (denying motion to strike nationwide class allegations in part because discovery may show that there are not class members in every state and therefore class may be manageable and there may be no material differences in state laws).

In sum, the Court finds that whether Habich can represent a class of individuals from other states goes to his ability to represent the multi-state class under Rule 23, rather than to his standing. That said, the Court has doubts about whether Habich's nationwide class allegations are manageable. If Habich files an amended complaint—as discussed below, *see infra* Section I.B—future class-wide discovery should be as narrowly tailored as possible. The Court is confident that the Magistrate Judge will continue to expertly manage any discovery issues that arise.

### B. Different Meters

Next, Defendants argue that Habich cannot pursue class claims on behalf of those injured by different meters installed by entirely different companies. Memo. Strike at 1, 5 (citing *Willard v. Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814, 824 (N.D. Ill. 2021)). As with the argument above, Habich also does not address this argument. The Court agrees with Defendants.

Here, Habich alleges that his injuries were caused by an Aclara I-210+c electric smart meter installed by ComEd and distributed and manufactured by Aclara Tech and Aclara Meters. FAC ¶¶ 5–8 14,18–19. Yet, Habich proposes to represent three classes of individuals who were injured by "Smart Meters." FAC ¶¶ 64, 77, 87. That is, not just an Aclara I-210+c electric smart meter, but any Smart Meter. As Defendants argue and as the Court found in *Willard*, class action plaintiffs cannot create standing by piggybacking on the injuries of unnamed class members. *Willard*, 577 F. Supp. 3d at 823–24 (citing *Payton*, 308 F.3d at 682). "[A] person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action." *Payton*, 308 F.3d at 682. Accordingly, the Court agrees with Defendants that Habich lacks standing to assert claims based on smart meters that did not injure him, that is, smart meters other than the Aclara I-210+c electric smart meter.[5] *See Willard*, 577 F. Supp. 3d at 824 (citing, among other cases, *Bakopoulos v. Mars Petcare US, Inc.*, 2021 WL 2915215, at *3 (N.D. Ill. July 12, 2021)).

As it did in *Willard*, the Court acknowledges that other courts in this District have found differently—namely, a second line of cases have allowed consumer-fraud

---

[5] The Court recognizes that at first blush it may appear inconsistent to find that the nationwide class claims are a Rule 23 issue while the class claims for other products implicate standing. However, as stated above, a legal theory (that is, what state statute or common law provides the basis for the claim) does not implicate Article III, *see Porter*, 2016 WL 6948379, at *4, whereas a plaintiff cannot establish an injury-in-fact caused by a product that he did not purchase or use, *see Flaherty*, 2021 WL 5299773, at *4. Other courts similarly have found that a plaintiff lacks standing to bring claims for products he or she did not purchase, while also finding that nationwide class claims are appropriately addressed at class certification. *See, e.g.*, *Flaherty*, 2021 WL 5299773, at *4–6; *Porter*, 2016 WL 6948379, at *3–4.

11

claims based on substantially similar products to survive until at least the class certification stage, while a third group has found the issue to be a Rule 23 class certification issue rather than an Article III standing issue. *See Willard*, 577 F. Supp. 3d at 824 (collecting cases). The Court finds the reasoning of the third line of cases persuasive; however, Habich has provided no basis for the Court to revisit its holding in *Willard* and the Court's own analysis of the issue supports adhering to that finding here.

Accordingly, because Habich does not have standing to pursue his class claims for relief based on injuries caused by "smart meters" other than the Aclara I-210+c electric smart meter, Counts V, VI, and VII are dismissed without prejudice. Habich may file an amended complaint addressing the issues identified in this Order.

### B. Injunctive Relief

Lastly, Defendants argue that Habich lacks standing to pursue a claim for injunctive relief as he is aware of the issues with the Aclara I-210+c electric smart meter and is unlikely to be harmed by the Defendants' alleged conduct again. Memo. Strike at 15 (citing *Camasta v. Jos. A Bank Clothiers, Inc.*, 761 F.3d 732, 740–741 (7th Cir. 2014); *Bakopoulos,* 2021 WL 2915215 at *3).

"To seek prospective injunctive relief, plaintiffs must allege a 'real and immediate' threat of future violations of their rights[.]" *Bakopoulos*, 2021 WL 2915215, at *3. And "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id*. (cleaned up). The Court agrees with

12

Defendants that Habich is unlikely to be harmed in the future by the manufacturing or installation of a Aclara I-210+c electric smart meter because he is aware of the alleged defect or combustion related to the smart meter. Since Habich does not allege any imminent future injuries and has not suggested how discovery could shed light on this relief, Habich lacks standing to seek prospective injunctive relief.

In light of the Court's resolution of Defendants' standing arguments, the Court need not address Defendants' alternative Rule 23(a) arguments.

## Conclusion

For the foregoing reasons, the Court construes the Defendants' motion to strike [48] as it pertains to standing to be a motion to dismiss under Rule 12(b)(1) and grants the motion. The Court finds that Habich lacks standing to pursue class claims for smart meters that did not injure him and accordingly dismisses Counts V, VI, and VII without prejudice. By October 12, 2023, Habich may file an amended complaint addressing the issues identified in this Order. The Court also dismisses without prejudice Habich's claim for prospective injunctive relief.

Dated: September 28, 2023

United States District Judge
Franklin U. Valderrama